### KEIPER et al. v. MILLER.

(Circuit Court, E. D. Pennsylvania. June 12, 1895.)

### No. 26.

CHAMPERTY.

Upon the trial of a suit for infringement of a patent, it appeared that the suit was brought by an assignee, to whom the patent had been assigned, 14 years after its issue, and when it was known to have been infringed, under an agreement that such assignee should prosecute suits against infringers, at his own expense, and divide the recoveries with the patentee. *Held*, that such agreement constituted champerty, and that the bill should be dismissed.

This was a suit by Henry B. Keiper and Lanious B. Keiper against Charles Miller to restrain the infringement of a patent. The cause was heard on the pleadings and proofs.

Jerome Carty and R. A. Parker, for complainants.
Butterworth & Dowell, for defendant.

DALLAS, Circuit Judge. The complainants base their claim of title to the patent in suit upon an assignment by the patentee, Samuel M. Brua, expressed to be for a nominal consideration, and made about 14 years after the patent had been issued. This assignment does not disclose the actual transaction to which it relates. It was not made in execution of a sale of the patent, but under an agreement that the legal title thereto should be vested in the assignee for the purpose of enabling him to settle with, or to proceed against, infringers, for the benefit of the patentee, as well as of the assignee, but wholly at the expense of the latter. This suit is prosecuted in pursuance of that agreement. The testimony of Mr. Brua himself satisfies me of this. He admits that he has "an interest in the result of this case, dependent upon the success of the complainants." Being repeatedly asked to state what that interest is, he declined to answer, upon the objection and instruction of complainants' counsel that the question was "incompetent, irrelevant, and immaterial." I do not think that this objection was well taken; but whether it was or was not is not very important, inasmuch as, in my opinion, enough has been shown to require the conclusion that "the suit in the present case has been instituted by a volunteer, on speculation," or, at least, to cast upon the complainants the burden of proving the contrary. The facts are peculiarly within their knowledge, and the evidence under their control, yet they not only failed to show them, but interposed to prevent their disclosure by the defendant's examination of their own witness. It would be difficult to

point out every particular portion of the testimony of this unwilling witness which has led me to the conclusion that I have reached; but the effect of it as a whole is very clear to me, and I have given it the most minute and thoughtful attention. Mr. Brua was asked one question which it is to be much regretted he did not answer, for it covered the whole matter, and a reply to it would have avoided the necessity of exploring a long and tedious examination for the discovery of a single fact which he might have stated, either way, in a single word. That question was, "You have some arrangement, have you not, with the complainants, by which they took an assignment of the patent, and bring suit, and defray the expense, and give you a certain per cent. if anything is recovered?" This he refused to answer, in consequence of the objection and instruction of the complainants' counsel; but he had previously said that it was his presentation of his patent (infringements of which had been long known to him) to Mr. Keiper (the assignee) that started the matter; meaning by this "that he (Keiper) brought this matter before the public * * * by offering to settle if they desired to do so. If not, he would bring suit against the millers to test the validity of the patent." Mr. Keiper "started the matter,"—brought this dormant patent into active and aggressive notice, and the question is: Upon what agreement with the patentee did he do this? Keiper, not Brua, was to settle or to bring suits. That is plain. Still, it does not appear that Brua was to part with his patent, except to enable Keiper to do this, and to give him the control of settlements and suits. The proportion of the "collections" which Brua was to receive he has refused to tell, but that he was to receive some proportion of them he has distinctly avowed; and that he was to be considered a substantial party to all proceedings instituted by Keiper appears upon a fair scrutiny of the answers made by Mr. Brua on cross-examination, of which I extract the following:

"XQ. 201. Is your agreement with the complainants as to the amount you are entitled to receive, whatever it is, in writing, or is it merely in parol, or verbal? A. I decline to answer this question. XQ. 202. Whatever bargain you had in that behalf was entered into at or before you assigned the patent, and before these suits were brought. Am I right about that? A. Whatever was done was done before suit was brought. XQ. 203. Have you any views or say as to the terms upon which alleged infringers may settle? A. That don't belong to my part of the matter. I am never consulted in that matter; not as a general thing. XQ. 204. But you do have a say as to the terms upon which alleged infringers may settle, do you not? A. I am at liberty to give my opinion in that matter. XQ. 205. That is, under the terms of your agreement with the complainants, you have this privilege? A. No; I don't know that I would have that privilege. XQ. 206. You stated above that you are not consulted, as a general thing, as to the terms upon which alleged infringers may settle. Do you mean to say now that you have nothing to say regarding settlements with alleged infringers? A. I would say that the parties making collections are not under any obligations to consult me about what infringers should pay. XQ. 207. Have you not told one or more parties that Mr. Keiper's signature alone is not sufficient to effect a settlement, but that your signature is required to all such papers? (Objected to, unless counsel embodies in the question, and calls to the attention of the witness, the specific times and the names of parties to whom such assertions were made, together with all attending circumstances.) A. I may have had a conversation with a member of the association (the Cumberland Valley Millers' Protective Asso-

ciation). He seemed to signify that the parties would not prosecute only certain people. I told him that we were obliged to prosecute every one, unless they would settle satisfactorily."

It is unnecessary to exhaustively discuss the evidence bearing upon this matter, or to refer at all to certain other facts to which the defendant's counsel have, not without pertinence, adverted in this connection. It is enough to say that, upon all the proofs, I am unable to escape the conviction that this suit has been brought in pursuance of a bargain between the complainants and Brua, the patentee, to divide the recovery between them, if they should prevail, and the former to carry on the suit at their own expense. Such a bargain constitutes champerty (Kent, Comm. p. 485, note d); and the following observations of Judge Shipman in Gregerson v. Imlay, 4 Blatchf. 504, Fed. Cas. No. 5,795, are directly in point:

"This is not the case of an assignment of an interest in an individual claim, or a sale of property in esse which is involved in a legal controversy, but it is an attempted transfer of an interest in indefinite litigious rights, and in claims for unliquidated damages, arising out of torts, indefinite in number and amount, and limited only by territorial boundaries, covering nearly the entire country. Passing by other grave questions that suggest doubts as to the validity of such a contract, it is sufficient to say that it is one that no court of equity should countenance, inasmuch as it is tainted with champerty and maintenance. This view of the duty of courts of equity is fully supported by the chief baron of the exchequer in the case of Prosser v. Edmonds. 1 Younge & C. Exch. 481, where he remarks that such courts should lend no countenance to agreements which partake in any manner of champerty, although they might be barely valid at law. * * * To arm one individual with exclusive and unlimited power over the claims of another for unliquidated damages arising out of numerous torts, with power to sue and press the claims to judgment in all courts, in the name of the injured party, not for a fixed or a reasonable compensation to be determined by the amount of labor performed and the expense incurred, but for what might prove an enormous bounty proportioned to the amount that might be recovered, while at the same time the other party is stripped of all power to adjust, settle, or discharge those claims, of the justice of which he ought to be the better judge, would be detrimental of the peace of society and the safety of individuals, and against public policy."

It is true that, in the case in which this language was used, the question arose upon an application by one of the parties to the champertous agreement for a provisional injunction to restrain the violation of that agreement by the other party thereto; whereas, in the present case, the unlawfulness of the agreement is set up by a third party, to defeat a suit which is prosecuted in accordance with its terms, and with the acquiescence of both parties to it. This, however, makes no difference. The views expressed by Judge Shipman, in which I fully concur, are, in my opinion, equally applicable to the present case as to that which was before him. It may be conceded that, as argued for complainants, an arrangement that counsel shall receive part of the proceeds of a suit in which he is professionally employed will not prevent a recovery therein; but where the title which the plaintiff relies upon, and upon which his right to sue is dependent, is tainted with champerty, the case presented is a very different one, for there the court is quite as plainly asked to uphold the obnoxious contract as upon a motion (as in Gregerson v. Imlay) to restrain its violation.

In Burnes v. Scott, 117 U. S. 589, 6 Sup. Ct. 865, the question was, "not whether a champertous contract between counsel and client is void, but whether the making of such a contract can be set up in bar of a recovery on the cause of action to which the champertous contract relates." This question was answered in the negative; but the title of the plaintiff in that case was not infected with champerty, and the supreme court referred with apparent approval to the opinion of the vice chancellor in Hilton v. Woods, L. R. 4 Eq. 432, where the law is stated, and the distinction which I have made is clearly pointed out, as follows:

"But it was strenuously argued by the counsel for the defendant that the bargain between the plaintiff and Mr. Wright, under which this suit was instituted, amounted to champerty and maintenance, and consequently disqualified the plaintiff to sue, and that I was therefore bound to dismiss the bill, or to make the plaintiff pay the costs of the suit, or that I ought not, at all events, to give him any costs. I have carefully examined all the authorities which were referred to in support of this argument, and they clearly establish that whenever the right of the plaintiff, in respect of which he sues, is derived under a title founded on champerty or maintenance, his suit will on that account necessarily fail. But no authority was cited, nor have I met with any, which goes the length of deciding that, where a plaintiff has an original and good title to property, he becomes disqualified to sue by having entered into an improper bargain with his solicitor as to the mode of remunerating him for his professional services in the suit or otherwise. It is clear that the bargain between the plaintiff and Mr. Wright amounted to maintenance; and if the latter had been the plaintiff, suing by virtue of a title derived under that contract, it would have been my duty to dismiss the bill."

It is not necessary to cite the many additional authorities, English and American, by which this view of the law is supported. I have no doubt of its correctness; and, as I have said, it seems to have met the approval of the supreme court of the United States in Burnes v. Scott, supra. In my opinion, it rules this case.

Bill dismissed, with costs.