## C. H. STARKE v. GEORGE R. WANNEMACHER.

(156 N. W. 494.)

**Promissory note — purchase of — by attorney — suit — intention.**

1. Section 9412, Compiled Laws 1913, does not render illegal the purchase by an attorney of a promissory note, unless it is shown that it was purchased with intent to bring suit thereon.

**Promissory note — delivery — consideration — failure of — evidence — conflicting — questions for jury.**

2. Where the evidence on the questions of delivery and failure of consideration of a promissory note is in conflict, such questions are properly submitted to the jury.

**Judgment — motion for — notwithstanding verdict — order denying — nonappealable.**

3. Following Turner v. Crumpton, 25 N. D. 134, and Houston v. Minneapolis, St. P. & S. Ste. M. R. Co. 25 N. D. 469, it is *held* that an order denying a motion for judgment notwithstanding the verdict is non-appealable.

Opinion filed February 5, 1916.

Appeal from a judgment and an order denying a motion for judgment notwithstanding the verdict of the District Court of Stark County, *Crawford*, J.

Defendant appeals.

Affirmed.

*F. C. Heffron* (of record) and *Newton, Dullam, & Young* (on oral argument), for appellant.

Our statutes upon the question of right of an attorney at law to buy promissory notes with the intention to bring suit on them are practically declaratory of the doctrine of champerty. Comp. Laws 1913, §§ 9412, 9414, 9416 and 9417.

The purchase of the note in question with intent to sue, if necessary, was a criminal act, and void, and gives plaintiff no right to bring or maintain this action. Galbraith v. Payne, 12 N. D. 164, 96 N. W. 258; Burke v. Scharf, 19 N. D. 227, 124 N. W. 79; Mann v. Fairchild, 14 Barb. 548, 2 Keyes, 106; Arden v. Patterson, 5 Johns. Ch. 48; Browning v. Marvin, 100 N. Y. 144, 2 N. E. 635; Maxon v. Cain, 22 App. Div. 270, 47 N. Y. Supp. 855; Dahms v. Sears, 13 Or. 47, 11 Pac. 891; Miles v. Mutual Reserve Fund Life Asso. 108 Wis. 421, 84 N. W. 159.

Nor does the fact that the purchase was made with intent to sue only in case of contingency make any difference. Moses v. McDivit, 2 Abb. N. C. 47.

When payment and delivery are concurrent, there is nothing to be done by either party, and if nothing is done by either, neither is in default, and neither party can hold the other for breach of the contract. The contract and the note in suit had been abandoned and canceled by the parties to the original contract, and therefore the note had no existence,—was not the subject of sale. Bartlett v. Scott, 55 Neb. 477, 75 N. W. 1102; Haynes v. Brown, 18 Okla. 389, 89 Pac. 1124; Cole v. Swanston, 1 Cal. 51, 52 Am. Dec. 288; Barnard v. Houser, 68 Or. 240, 137 Pac. 227.

*T. F. Murtha,* for respondent.

An order denying a motion for judgment notwithstanding the verdict is not an appealable order. Turner v. Crumpton, 25 N. D. 134, 141 N. W. 209; Houston v. Minneapolis, St. P. & S. Ste. M. R. Co. 25 N. D. 471, 46 L.R.A.(N.S.) 589, 141 N. W. 994, Ann. Cas. 1915C, 529.

A motion for new trial in the court below is necessary to secure a review of questions of fact in the supreme court. Comp. Laws 1913, §§ 7842, 7843.

The purchase of notes and choses in action by an attorney is not within the prohibition of the statute, and is not champerty; and appel-

lant was not a party to the alleged champertous contract, and therefore cannot raise such question, even if it here existed. Hall v. Bartlett, 9 Barb. 297; Moses v. McDivitt, 88 N. Y. 62; Wetmore v. Hegeman, 88 N. Y. 73; West v. Kurtz, 16 N. Y. S. R. 696, 2 N. Y. Supp. 110, 15 Daly, 99, 3 N. Y. Supp. 14; Van Dewater v. Gear, 21 App. Div. 201, 47 N. Y. Supp. 503; De Forest v. Andrews, 27 Misc. 145, 58 N. Y. Supp. 358; Wightman v. Catlin, 113 App. Div. 24, 98 N. Y. Supp. 1071; Bulkeley v. Bank of California, 68 Cal. 80, 8 Pac. 643; Tuller v. Arnold, 98 Cal. 522, 33 Pac. 445.

In order to come within the statute, the purchase of the note must be for the very purpose of bringing suit on it. West v. Kurtz, 16 N. Y. S. R. 696, 2 N. Y. Supp. 110.

It is the settled law that conveyances made at judicial or official sales, or under decree of court, of lands held adversely, are not champertous, either at common law or under the statute. State Finance Co. v. Halstenson, 17 N. D. 149, 114 N. W. 724; 6 Cyc. 858, 974, and cases cited; Electric Lighting Co. v. Rust, 117 Ala. 680, 23 So. 751; Humes v. Bernstein, 72 Ala. 546.

At common law where personal property was in the adverse possession of another, the sale or assignment was champertous, as against public policy. 6 Cyc. 857, and cases cited.

This rule is held not to apply to judicial sales. 6 Cyc. 858; Hoyt v. Thompson, 5 N. Y. 345; Bluefields S. S. Co. v. Lala Ferreras Cangeloist S. S. Co. 133 La. 424, 63 So. 96.

The question of champerty in the purchase cannot be raised by one not a party to the alleged champertous contract, to defeat a just debt. Woods v. Walsh, 7 N. D. 376, 75 N. W. 767; Randall v. Baird, 66 Mich. 312, 33 N. W. 506.; Isherwood v. H. L. Jenkins Lumber Co. 87 Minn. 388, 92 N. W. 230; Walsh v. Allen, 6 Colo. App. 303, 40 Pac. 473; Prosky v. Clark, 32 Nev. 441, 35 L.R.A.(N.S.) 512, 109 Pac. 793; Croco v. Oregon Short Line R. Co. 18 Utah, 311, 44 L.R.A. 285, 54 Pac. 985; Pennsylvania Co. v. Lombardo, 49 Ohio St. 1, 14 L.R.A. 785, 29 N. E. 573; Taylor v. Gilman, 58 N. H. 417; Million v. Ohnsorg, 10 Mo. App. 432; Hart v. State, 120 Ind. 83, 21 N. E. 654, 24 N. E. 151.

CHRISTIANSON, J. This action was brought to recover upon a promissory note in the sum of $1,500, which it is alleged was executed

and delivered by the defendant to the Missouri Slope Brick & Tile Company for a valuable consideration, on or about March 30, 1908, and thereafter sold and assigned to the plaintiff for a valuable consideration. The answer interposed the defenses of (1) want of consideration; (2) failure of consideration; (3) nondelivery of the note; and (4) that the plaintiff was an attorney at law, duly admitted to practice and practising his profession in the state of North Dakota, and that he purchased the note with other choses in action from the said Missouri Slope Brick & Tile Company for the purpose of bringing suit thereon, and that hence the purchase was champertous, and plaintiff barred from maintaining the action. The latter defense was first tried to the court without a jury. The court held that the plaintiff's purchase of the note was not champertous, and that plaintiff had a right to maintain the action. A jury was thereupon impaneled, and the other issues were submitted to the jury, which returned a verdict in favor of the plaintiff. Judgment was entered pursuant to such verdict. Defendant did not move for a new trial, but, some time subsequent to the entry of judgment, moved for judgment notwithstanding the verdict. The appeal is taken from the judgment and from the order denying defendant's motion for judgment notwithstanding the verdict.

Appellant makes no specification of insufficiency of evidence, but presents for our consideration certain errors of law. A number of such assignments, however, have been abandoned, and the only errors argued in appellant's brief, and, hence, the only ones which we shall consider are: (1) Was the plaintiff's purchase of the note in question champertous and void under the laws of this state? (2) Was defendant entitled to a directed verdict upon the grounds of nondelivery of the note or want or failure of consideration thereof? We will consider these propositions in the order stated.

(1) The note sued upon was given by the defendant to Missouri Slope Brick & Tile Company for fifteen shares of stock in such company. The stock was purchased through the agency of one Kalman. At the time the note was given, the defendant also purchased ten shares of stock in the same company, owned by Kalman. The defendant executed and delivered his two notes, one for $1,000 for the ten shares of stock purchased from Kalman, and one for $1,500 for the fifteen shares of stock purchased from the Missouri Slope Brick & Tile Company

(the latter being the note involved in this action). Kalman testified that he sold the stock, prepared the note involved in this action, and that the defendant, Wannemacher, signed it in his presence.

He further testified:

Q. And what was that note given for?

A. For $1,500 worth of stock in the Missouri Slope Brick & Tile Company.

Q. Was there any understanding or agreement as to what was to be done with the stock?

A. The stock was to be held as collateral on the note.

Q. That is, Mr. Wannemacher was not to have the stock until he paid the note?

A. No, that says on the face of the note.

Q. I call your attention to some writing in the lower left-hand corner of the note as follows: 'Secured by Mo. Slope B. & T. Company stock No. —' and ask you in whose handwriting that is?

A. That's in my handwriting.

Q. And when was that put on there?

A. At the time this note was made.

.   .   .   .   .   .   .   .   .   .

Q. At the same time that Mr. Wannemacher gave this "Exhibit F," the note for $1,500, did he purchase any other stock besides this of the Missouri Slope Brick & Tile Company?

A. He did.

Q. How many shares?

A. Ten.

Q. Who owned that ten shares?

A. I did.

Q. Did he give you a note for that?

A. I don't remember now which it was, but I think it was.

Q. Was it understood between you and Mr. Wannemacher that the stock could be issued and held as security for the note?

A. Yes, sir.

The defendant paid the thousand dollar note and received the canceled note and the ten shares of stock. Subsequently in 1910, the Missouri Slope Brick & Tile Company became insolvent and a receiver

was appointed. On April 5, 1913, the receiver, pursuant to the order of the court, offered for sale and sold at public auction all the remaining assets of the company, consisting of twenty-four accounts, notes and judgments against various parties, including the note involved in this action, and 16,850 miscellaneous bricks. All of such assets were purchased by the plaintiff at such receiver's sale.

Appellant contends that defendant's purchase of the note was champertous and void under the provisions of §§ 9412 and 9417 of the Compiled Laws of 1913. These sections read as follows: "Every attorney who, either directly or indirectly, buys or is interested in buying any evidence of debt or thing in action, with intent to bring suit thereon, is, guilty of a misdemeanor." Comp. Laws 1913, § 9412.

"The provisions of §§ 9412, 9414, and 9416 relative to the buying of claims by an attorney, with intent to prosecute them, or to the lending or advancing of money by an attorney in consideration of a claim being delivered for collection, shall apply to every case of such buying a claim, or lending or advancing money, by any person prosecuting a suit or demand in person." Comp. Laws 1913, § 9417.

The only evidence on the question of champerty was the testimony of the plaintiff himself.

On being called by the defendant for cross-examination, under the statute, he testified in part as follows:

Q. How did you purchase this note?

A. I purchased this note at a sale which was advertised in the Dickinson Press, of the assets and uncollectable accounts of the receiver of the Missouri Slope Brick & Tile Company, at public auction at the front door of the courthouse in Dickinson.

Q. And was the note delivered to you at that time?

A. No.

Q. Did you buy any other choses in action at that time?

A. I bought a number of accounts at that time.

Q. And you expected to sue on them when you bought them, if necessary, for collection?

A. I expected that if I couldn't collect them otherwise probably suit would be necessary on some of them.

STARKE v. WANNEMACHER 623

Q. And in pursuance of your intent to sue, if necessary, you brought this action?

A. Yes.

Q. Did you ever demand this of Mr. Wannemacher before bringing suit?

A. No, sir.

Q. You knew he was a responsible party?

A. Why, I knew he wasn't.

Q. You knew he had considerable money in the bank here at that time?

A. No, sir. I knew just otherwise; that he wasn't a responsible party. Mr. Heffron, I'll tell you I knew that Mr. Wannemacher had no property in this country, and I thought the note was worth nothing, and I knew that all the property that he had was in his wife's name, and I didn't think the note was collectable. I also knew that he was a nonresident of this state.

Q. And that he was worth considerable money?

A. No. And I also knew that he had a number of legitimate debts around here which he had compromised, after getting his property out of his own hands, for a great deal less than half the face value of them.

Being called as a witness in his own behalf, he testified in part as follows:

Q. Did you buy this with the sole intent and purpose of suing Mr. Wannemacher?

A. No, sir. I had no idea of suing on any of the accounts at that time. My real inducement in making the purchase was the brick which I knew to be of value. The accounts had been in the hands of Mr. McBride for a number of years, and he had attempted collection of them and had set them out as uncollectable, and I felt that they were of little, if any, value.

Q. Mr. Starke, had you any idea or purpose at the time you purchased these notes, or any other time, of harassing or annoying Mr. Wannemacher?

A. Not at all. I knew Mr. Wannemacher not at all. Knew nothing of him.

It is not necessary to construe the statutory provisions invoked by defendant further than to say that this case is not within such provisions, or affected by them. The statute is penal. If the purchase was made in violation of the terms of the statute, then plaintiff is guilty of a misdemeanor. The presumption is that he is innocent. The statute does not pretend to prevent attorneys from making investments, or purchasing securities or obligations. It only forbids such purchase "with intent to bring suit thereon." The offense rests in the intention. It is not the purchase, but the "intent to bring suit thereon," which converts an act otherwise lawful into a crime. Such intent is the element which is criminal and vitiates the contract. See Woods v. Walsh, 7 N. D. 376, 75 N. W. 767; Tuller v. Arnold, 98 Cal. 522, 33 Pac. 445; Re Cummins, 143 Cal. 525, 77 Pac. 479; Bulkeley v. Bank of California, 68 Cal. 80, 8 Pac. 643; Moses v. McDivitt, 88 N. Y. 62; Wightman v. Catlin, 113 App. Div. 24, 98 N. Y. Supp. 1071; Van Dewater v. Gear, 21 App. Div. 201, 47 N. Y. Supp. 503.

There is no evidence in this case showing that plaintiff bought the note "with intent to bring suit thereon." But there is positive testimony to the contrary.

(2) The issues tried to the jury were in reality reduced to one,— whether the defendant's purchase of the stock was conditional or unconditional. The defendant contended that such purchase was conditional, and that the note was given for stock which was never delivered. Defendant's contentions are set forth in the motion for a directed verdict made at the close of the testimony, which was as follows: "Now comes the defendant and renews the motion for a directed verdict in his favor and against the plaintiff, and calls the court's attention to the following grounds of defendant's motion: That the evidence in this case having clearly shown that the note sued upon was given for stock in the Missouri Slope Brick & Tile Company, and that said stock was never tendered or delivered to the defendant; that this section cannot be maintained for the reason that no tender has been offered in the pleadings, and could not be offered by this plaintiff, the company being defunct. And, further, that the stock could not be assigned as collateral, because never delivered, and therefore never assigned; and, further, that this plaintiff could not tender the stock, for the reason that it has no authority and the company does not now exist."

Defendant's counsel earnestly contends that this motion should have been granted. The difficulty with the motion as well as with counsel's argument is that it is predicated solely upon defendant's testimony, and ignores the evidence offered by plaintiff. It is conceded that defendant on the same day executed two notes, one for $1,000 and one for $1,500, for capital stock in the Missouri Slope Brick & Tile Company; the thousand dollar note being for stock owned by Kalman and assigned by him to the defendant. That the defendant thereafter paid the thousand dollar note and received the canceled note and his stock certificate for ten shares of stock. The notes were executed and delivered March 30, 1908. The books of the company, which were offered in evidence by the plaintiff, show that on March 31, 1908, two stock certificates were issued to the defendant,—certificate No. 85, for ten shares originally issued to Kalman and transferred by Kalman to the defendant, and certificate No. 86, for fifteen shares purchased by defendant from the company. The certificate for ten shares was delivered to defendant when he paid the thousand dollar note. The certificate for fifteen shares (offered in evidence and contained in the record on this appeal) came into the hands of the plaintiff at the time of his purchase of the note involved in this suit. The indorsement, referred to by Kalman, to the effect that the note is secured by stock in the Missouri Slope Brick & Tile Company, appears on the note. Plaintiff also produced as witnesses the president and secretary of the company. Clearly, the evidence of Kalman, if true, was sufficient to show that the note was executed and delivered unconditionally as payment for the fifteen shares of stock evidenced by the stock certificate offered and received in evidence, and that such stock certificate was retained by the company as collateral security for the payment of the note. Kalman's testimony is corroborated by the indorsement of the note, and the books of the company.

The defendant was therefore not entitled to a directed verdict. The disputed questions were submitted to the jury, under appropriate instructions, eminently fair to the defendant. The jury by its verdict determined these questions adversely to the defendant. This determination is binding on this court.

Error is also assigned on the court's ruling in sustaining objections to the following two questions put to plaintiff on his cross-examination:

Q. Do you know what the note was given for?

Mr. Murtha.   Objected to as immaterial and improper cross-examination.

The Court.   Objection sustained.

Q. How much did you pay for this note?

. Mr. Murtha.   I object to that as being immaterial, improper cross-examination, wholly without the issues of this case.

The Court.   Objection sustained.

Mr. Heffron.   Exception.

This specification, although mentioned on oral argument, was not supported by argument in appellant's brief, and therefore may be deemed abandoned. The specification, however, if considered, is without merit.

In his answer, among other things, defendant alleges "that C. H. Starke *purchased* this note with other choses in action from said Missouri Slope Brick & Tile Company for the purpose of bringing suit thereon; that at the time of obtaining said *transfer* of said note, said C. H. Starke knew or should have known that defendant did not owe the Missouri Slope Brick & Tile Company any sum of money whatever by reason of said note, *that said note was purchased* and this action was instituted and maintained by plaintiff," etc. Hence, it will be observed that defendant's answer affirmatively alleges that the note was purchased by, and transferred to, the plaintiff. Plaintiff's title, therefore, was not in issue, except as raised by the defense of champerty.

As already stated, the defense of champerty was first tried to the court without a jury. Both parties consented to this method of trial, and the record shows that, upon the trial of this issue before court, the plaintiff was fully cross-examined by defendant's counsel with reference to the purchase of the note in question and the amount paid by plaintiff for the assets of the Missouri Slope Brick & Tile Company. There was no dispute as to the consideration for the note, and it was conceded that plaintiff purchased the same after maturity, and subject to all defenses which defendant might have interposed against the original holder. Hence, the defendant could not possibly be prejudiced by the rulings on these objections. In fact, appellant's counsel does not seriously contend that this was proper cross-examination, but bases his argument on the theory that the testimony excluded was material to de-

fendant's defense as tending to corroborate defendant's contention that the note was conditionally delivered. It is at least very doubtful if it had any logical tendency to do this. Even if it did it was not necessarily proper cross-examination. The questions related to matters not in issue under the defenses tried to the jury, and to matters not covered by the examination in chief. The competency of the testimony sought to be elicited by the question is not apparent. · It is virtually conceded that they did not constitute cross-examination. Hence, obviously it cannot be said that the trial court erred in sustaining the objections.

(3) Appellant, also attempted to appeal from an order denying defendant's motion for judgment notwithstanding the verdict. This order was nonappealable, and hence cannot be considered. Turner v. Crumpton, 25 N. D. 134, 141 N. W. 209; Houston v. Minneapolis, St. P. & S. Ste. M. R. Co. 25 N. D. 471, 46 L.R.A.(N.S.) 589, 141 N. W. 994, Ann. Cas. 1915C, 529. Appellant is not prejudiced by this fact, however, as such order merely reaffirmed the court's ruling in denying defendant's motion for a directed verdict. The error predicated upon the denial of the motion for a directed verdict was reviewable on the appeal from the judgment, and has been fully considered and determined adversely to defendant.

This disposes of all the questions presented for our determination, and it follows from what has been said that the judgment must be affirmed. It is so ordered.