R. J. SAILER, Respondent, v. MERCER COUNTY, a Public
Corporation, and Grace J. Smith, also known as Grace L.
Smith, Appellant.

(45 NW2d 206)

Opinion filed November 8, 1950.   Rehearing denied Dec. 29, 1950

*Maxkoff, Kellogg & Muggli* and *Floyd B. Sperry,* for appellant.

*W. H. Esterly* and *Sullivans, Kelsch & Lord,* for respondent.

NUESSLE, Ch. J.  This is an action to quiet title.  See Section 32–1701, Chapter 32–17 RC 1943.  The defendant Smith answering, the other defendant defaulting, challenged the right of the plaintiff to bring the action on the ground that the plaintiff had no such right or interest in the land involved as to entitle him to bring the action.  The case was tried to the court.  Judgment was ordered and entered for the plaintiff.  Whereupon Smith perfected the instant appeal.

The pertinent facts stated briefly are substantially as follows: G. R. Brainard owned a half section of land, the north half of Section 31, Township 146, Range 89 in Mercer County, North Dakota.  In 1931, Brainard mortgaged this land to A. Bidwell, a resident of Freeport, Illinois, to secure a loan of $1500.00 and interest.  This loan was never repaid.  Taxes for 1935 were not paid and the land was sold at tax sale.  *The county purchased and received a tax sale certificate therefor.*  In 1937, Brainard rented the land to Albert Miller who continued to rent it from him until 1942.  *In February, 1942, the certificate of tax sale for the year 1935 was sold and assigned to the defendant, Grace J. Smith.*  She at once instituted proceedings to procure a tax deed.  Accordingly *on February 27, 1942, notice of expiration of*

*the period of redemption was issued by the county auditor.*
Brainard was then deceased, but a copy of this notice of expira-
tion was mailed to his widow, Mrs. G. R. Brainard, as well as to
Bidwell. This notice was also published in the local newspaper
in the issues of *March 5, 12, and 19,* 1942. No redemption was
made and tax deed was issued to *Smith, June 12, 1942.* On March
21, 1942, Smith, claiming the right of possession under her tax
certificate, which claim was not resisted, rented the land to Mil-
ler, giving a written lease therefor.

On March 12, 1942, the plaintiff wrote to the Freeport Se-
curities Company of Freeport, Illinois, as follows:

"I am interested in communicating with one A. Bidwell whose
postoffice address is given as Freeport, Ill. This party appar-
ently holds a mortgage against a half section land in Mercer
County, N. Dak. on which the *tax certificate holder is calling for
a deed.*

"I would appreciate if you could give me the full address of
this party, or if deceased the name and address of the successors
in interest, or administrators. . . ."

In response to this letter plaintiff received the following letter
dated March 26, from Hunter & Hunter, attorneys of Freeport:

"We represent the party who holds the mortgage against the
North half of Section 31, 146–89 located in Mercer County, North
Dakota about which you inquired through the Freeport Securi-
ties Company of Freeport, Illinois.

"We are informed that the land has a value from $2.50 to
$3.00 an acre and that there are approximately $171.00 taxes
against it. There are other parties interested in this land and
if you would care to make an offer for our mortgage we would
be pleased to give it consideration."

On May 12 thereafter, plaintiff wrote Hunter & Hunter:

"Referring to your letter of March 26th relative to the mort-
gage running to A. Bidwell I would pay *$60.00* for a proper as-
signment of the mortgage and notes, at this time. I know this
amount is small but it is my belief *that a foreclosure on my part
would involve litigation.* If you have not disposed of the same
I should be glad to see if some neighbor *would not be interested*

*in paying more.* If you wish to have me do so I will when in that vicinity ascertain if it is possible to obtain more.

"I would consider your information as to the value of the land about right. But I believe the total amount of taxes would be slightly more and then an additional two years taxes would accrue before title could be obtained. Also one poor crop together with the present "war freezing" would set back the prices.

"If my offer is acceptable to you can send the papers *with assignment in blank to me or the Union State Bank of Hazen for collection.*"

On July 10, 1942, Hunter & Hunter wrote the plaintiff:

"Enclosed please find assignment of original mortgage of G. R. Brainard and wife to A. Bidwell, together with the mortgage and note and abstract for which we will expect to receive the sum of $60.00. We are sending the papers direct to you and not the bank for collection inasmuch as we are relying on your integrity to promptly forward it to me."

This letter was received but the notes and mortgage were returned to Hunter & Hunter for endorsement and assignment. A new assignment was requested for the reason as stated by Sailer that he wanted it on a North Dakota form. This assignment was executed *on July 27, 1942, and the notes,* mortgage, and assignment were then returned to the plaintiff. The assignment was filed for record by plaintiff in the office of the register of deeds of *Mercer County on August 26. The assignee therein named was Albert Miller.* Whether he was thus named as assignee when the instrument was executed or his name was later inserted by the plaintiff does not appear, but the inference is justified that Miller's name was later inserted.

On July 18, 1942, plaintiff and Albert Miller entered into the following written agreement:

"THAT WHEREAS, R. J. Sailer is the owner of a first mortgage against the North Half (N½) of Section Thirty-one (31) in Township One Hundred Forty-six (146), North of Range Eighty-nine (89) West in Mercer County, North Dakota, said R. J. Sailer, being the owner of said mortgage by virtue of an

assignment of mortgage executed by A. Bidwell unto the said R. J. Sailer;

"AND WHEREAS, The said Albert Miller is desirous of becoming the owner of said mortgage, it is therefore agreed by and between the parties hereto as follows:

"That the said R. J. Sailer as party of the second part agrees to assign said mortgage unto said Albert Miller as soon as the notes which are secured by said mortgage have been properly endorsed and it is further agreed that foreclosure proceedings shall be immediately commenced *in the name of the said Albert Miller;* that in the event that said foreclosure proceedings are consummated and result in Sheriff's Certificate, that the said Albert Miller agrees to pay unto the said R. J. Sailer, the sum of Seven Hundred and no/100 ($700.00) Dollars. He shall, however, be allowed deductions for attorneys fee and unpaid real estate taxes and moneys to be advanced for the redemption of taxes, the amount of said taxes to be figured at $150.00.

"IT IS FURTHER AGREED That in the event that the foreclosure proceedings should not be completed, it is agreed that the said Albert Miller will reassign said mortgage unto R. J. Sailer and said R. J. Sailer as party of the second part will then pay the costs incurred for attorneys fees, and so forth.

"IT IS FURTHER AGREED That of the $700.00 hereinbefore referred to, that the said Albert Miller will pay the sum of $500.00 to R. J. Sailer when Sheriffs Certificate is issued, and the balance of $200.00 on or before the 1st day of October, 1943."

In March, 1943, notice of intention by Miller to foreclose the mortgage in question was served upon the defendant Smith. Smith knew there was an outstanding mortgage to Bidwell on record but had no notice or knowledge that either Miller or plaintiff had procured an assignment of it. Miller wished to retain possession of the land and when Smith went to him after receiving notice of the intended foreclosure and told him that she did not care to rent the premises to him if he were foreclosing, *but would rent to him if he would renounce all claims against the land, he agreed to such an arrangement.* Smith then on April 6, 1943, executed a lease to him and nothing further was done by

him in the way of foreclosing. *On the contrary, on April 9, 1943, he reassigned the note and mortgage to Sailer. Apparently in the meantime all of these papers had been in the possession of Sailer or of his brother who was his attorney.* On June 21, 1943, Sailer brought action to foreclose. The action was tried. Sailer had judgment. Execution was issued thereon and the property was sold by the sheriff pursuant to law. Sailer bid it in for the amount of the mortgage debt, interest, and costs amounting *to $2930.09, and received a sheriff's certificate of sale on which, in due course, a deed was issued to him.*

Predicated on the facts as above set out, the parties to this action advance the following contentions which we deem vital to the determination of the issues raised and which therefore require consideration. It is conceded that the defendant holds a tax deed to the premises herein involved and is in possession under this deed. She contends that whether or not the deed is good and *valid such possession is under color of title and adverse;* that she asks no affirmative relief *but merely challenges the right of the plaintiff to bring the action;* that plaintiff seeking to quiet title and determine adverse claims pursuant to the provisions of the statutes, Chapter 32–17 RC 1943, *to prevail, must do so on the strength of his own title;* that she being in possession under *color of title may challenge the right to maintain an action to quiet title and determine adverse claims as against her;* that in the instant case the plaintiff claims title through and under a sheriff's deed acquired by foreclosure of a mortgage, which, though executed and delivered prior to the time when her adverse possession began, was *thereafter assigned to the plaintiff while she was in such possession;* that plaintiff bought the note and mortgage in question for the purpose and with the intention of bringing suit thereon; that therefore the purchase and assignment of the note and mortgage were champertous, ineffective, and void as being in violation of and proscribed by the provisions not only of Section 12–1714 RC 1943, but also of Section 12–1719; that accordingly the plaintiff has no right, title, or interest in the land such as entitles him to maintain the action against her.

On the other hand, the plaintiff contends that the tax deed pursuant to which the defendant purports to occupy the land in question and under which she predicates her claim of possession under color of title, is void and therefore she cannot question the right of the plaintiff to bring the action; that his sheriff's deed is a good and valid instrument, for, though the assignment of the note and mortgage on which it was predicated was bought and taken while the defendant adversely held the property, this was done by plaintiff as a matter of investment and was not contrary to the ban of Section 12–1714 or of Section 12–1719 RCND 1943.

The law is firmly established in this state that one seeking to determine adverse claims and quiet title pursuant to the provisions of the statute, Chapter 32–17 RC 1943, supra, must recover, if at all, upon the strength of his own title and not upon the weakness of his adversary's title. Hannah v. Chase, 4 ND 351, 61 NW 18, 50 Am St R 656; Conrad and Roll v. Adler, 13 ND 199, 100 NW 722; Johnston Land Co. v. Mitchell et al, 29 ND 510, 151 NW 23; Nord v. Nord, 68 ND 560, 282 NW 507; Robertson v. Brown, 75 ND 109, 25 NW2d 781.

It is likewise well established that one who occupies and is in possession of land pursuant to a tax deed is so under color of title. That such possession is adverse and the occupant's title becomes material only when he who challenges it shows in himself a right superior to the right of the possessor. Hannah v. Chase, supra; Woolfolk v. Albrecht, 22 ND 36, 133 NW 310; Robertson v. Brown, supra.

Section 12–1714 RCND 1943 provides:

"Every person who buys or sells or in any manner procures, or makes or takes any promise or covenant to convey any pretended right or title to any lands or tenements, unless the grantor thereof or the person making such promise or covenant has been in possession, or he and those by whom he claims have been in possession of the same, or of the reversion and remainder thereof, or have taken the rents and profits thereof, for the space of one year before such grant, conveyance, sale, promise, or covenant is made, is guilty of a misdemeanor."

Section 12–1715 provides:

Section ". . . 12–1714 shall not be construed to prevent any person having a just title to lands, upon which there shall be an adverse possession, from executing a mortgage upon such lands."

Section 12–1719 provides:

"Every attorney and other person prosecuting a suit or demand in person, who, either directly or indirectly, buys or is interested in buying any evidence of debt or thing in action with intent to bring suit thereon, is guilty of a misdemeanor."

When Bidwell's mortgage was executed and delivered to him, the mortgagor, Brainard, was the owner and in possession of the mortgaged premises. There is no question as to the validity of this instrument. But when the plaintiff bought and procured the assignment of the Bidwell note and mortgage defendant was in possession of the premises under color of her tax deed.

The defendant's first challenge is predicated on the fact that at the time it was assigned to the plaintiff the property mortgaged was adversely held and therefore the assignment was void as contrary to the provisions of Section 12–1714, supra. We are of the opinion that this challenge of the assignment cannot be sustained. North Dakota inherited Section 12–1714 from Dakota Territory. It was enacted by the Territorial Legislature in 1876. See Section 189 of the Penal Code, Dakota Revised Codes of 1877. It doubtless was transcripted from a statute of the State of New York with which it was identical. The case of Tobias v. The Mayor, 17 Hun 534, decided in 1879 was practically identical with the case at bar. There the mortgage in question was executed and delivered March 1, 1871. The property mortgaged was taken by condemnation proceedings in February, 1874, and was thereafter held adversely to the mortgagor. The mortgage was assigned to the plaintiff Tobias in February, 1876. He thereafter asserted a claim predicated on this assignment. Its validity was challenged on the ground that it was void because forbidden by the statute. The court passing upon the question thus raised said:

"We are unable to perceive why the mortgage could not be

assigned so as to transfer a valid title thereto—it was a valid security, and no part of the principal sum had been paid. It is of frequent occurrence that a mortgage is executed by a party who is the owner and in the possession of land, and who subsequently conveys the mortgaged premises, without any reference in the deed to the mortgage, which is assigned by the mortgagee after such conveyance, and while such grantee is in the actual possession of the land holding the same adversely to the whole world. Yet we have never known the validity of such an assignment questioned, on the ground that it was contrary to the provisions of the statute before referred to. If the defendant's theory is sound, the practicable effort (effect) must be to invalidate all the assignments of mortgages which are executed after the mortgagor has conveyed the premises. Such a result could not have been intended by the Legislature in enacting such statutes, which is apparent from the fact that in such statutes the right to mortgage land held adversely is expressly declared, and the assignment of such mortgage is not in terms prohibited. We cannot doubt but that the plaintiff acquired a valid title to the bond and mortgage by the assignment to him, and that the same is in no manner obnoxious to the provisions of such statute.''

It seems to us that the reasoning of the paragraph quoted above is sound and is as pertinent today as at the time that paragraph was written, and we have been unable to discover any authority holding to the contrary. Accordingly the assignment in the instant case was good and the challege thus interposed cannot be sustained. See also in this connection Galbraith v. Payne, 12 ND 164, 96 NW 258; State Finance Co. v. Halstenson et al, 17 ND 145, 114 NW 724; 11 CJ, Champerty and Maintenance, Sec. 93, p. 267.

But the defendant also contends that the assignment was champertous because taken in violation of the provisions of Section 12–1719, supra, and therefore ineffective and void. It is exceedingly difficult to draw the line between those instances where a chose in action is purchased with a proper purpose and intent, and where it is purchased contrary to the provisions

of this statute. The purchase itself is not forbidden. The purchase with intent to bring suit thereon is forbidden. See Starke v. Wannemacher, 32 ND 617, 156 NW 494, 4 ALR 167. We have set forth the evidence contained in the record relative to the transaction leading to the purchase of the note and mortgage by the plaintiff. He denies that this purchase was made with intent to bring action to foreclose the mortgage. He insists that he bought it purely as an investment and that the foreclosure was merely incidental. The trial court absolved him from transgression of the statute on the ground that his testimony that he purchased purely as an investment was not directly disputed or contradicted in any manner; that the statute is a penal statute, and that "it was positively proven that plaintiff did not purchase the paper with any wrongful intent." The trial court saw and heard the witnesses and we have only the record before us. Thus the trial court's determination is entitled to grave consideration in passing upon this question of intent. Nevertheless we think the record speaks very plainly for itself and to the contrary. The facts and circumstances are such as very strongly tend to show an intent and purpose on the part of the plaintiff when he sought to bring an action on the note and mortgage. Notice of the expiration of the period of redemption was published in the local paper on the 5th, 12th, and 19th of March. On March 12, plaintiff wrote to ascertain the whereabouts of Bidwell, the mortgagee. Brainard, the mortgagor, was dead. Plaintiff testified that he made no inquiry as to whether his heirs or the administrator of the estate were in a position to or intended to pay the mortgage debt. He testified that he did not expect to collect the mortgage debt from the mortgagor or from the latter's estate. He expected litigation, for he said so in his letter. He testified that he did because he knew Smith would not "let loose without litigation." He cut the corners closely in dealing with Bidwell. He requested an assignment in blank. Whether he obtained it in blank and later inserted Miller's name as assignee is not made clear. *While he was dealing with Bidwell and before he procured the assignment, he arranged with Miller to foreclose the mortgage.* He

stipulated that "foreclosure proceedings shall be immediately commenced." His written agreement made with Miller recites that he then owned the mortgage. Subsequently when Miller declined to go forward with the foreclosure, he reassigned it to plaintiff, who shortly began the foreclosure action. It is enough to say that reading this record we can come to no other conclusion than *that though the plaintiff would benefit very substantially by the transaction, and to that extent his purchase of the note and mortgage was an investment,* yet *when he bought he had in mind either to immediately foreclose the mortgage or have someone else foreclose it for him in order that he might challenge and have defendant's tax deed set aside.* At all times after his arrangement with Miller he retained the note and mortgage in his possession or had it in the possession of his attorney. Accordingly we held that the transaction was within the ban of Section 12–1719 and champertous, and that the plaintiff acquired no title by reason of the foreclosure that he can enforce as against the defendant occupying the premises under color of her tax deed.

The defendant asked for no affirmative relief. We do not pass upon the question as to whether her tax deed is good or bad. We leave the parties where we found them.

The defendant Mercer County defaulted. The plaintiff in his pleadings alleged that he was ready, willing, and able to pay to the county any amount that might be found due to it on account of taxes on the property involved. The court in his findings of fact stated that pursuant to this offer and at the court's direction plaintiff had deposited in court the sum of $300.00 to redeem the taxes against said property, and the judgment provides that such money "be applied in redemption of taxes required to be redeemed from the tax sale." In view of what we have said in the foregoing opinion, the plaintiff is in no position to make redemption. Therefore, he may apply for and have returned to him the deposit made as stated above.

Judgment reversed and action dismissed.

BURKE, MORRIS and CHRISTIANSON, JJ., and GRONNA, Dist. J., concur.

NUESSLE, Ch. J. (On petition for rehearing.) The plaintiff and respondent has filed a petition for rehearing. He predicates his petition on three propositions. 1. "That the Court erred in finding and in concluding as a fact that the respondent purchased the note and the mortgage securing the payment thereof with intent to bring suit thereon in violation of Section 12–1719 RC 1943." 2. "That the Court erred in assuming without deciding that the appellant Smith could challenge the validity of plaintiff's deed (obtained through foreclosure of the mortgage) on the ground that it was champertous even though she was not a party to the transaction or contract of purchase of the assignment." 3. "That the Court erred in holding (by necessary implication) that the appellant could collaterally attack the validity of respondent's deed in this action which he had obtained through the foreclosure of the mortgage acquired by purchase of an assignment."

As to the first proposition, it is enough to say that the question as to whether there was a violation of Section 12–1719 RC 1943 was fully considered in the opinion filed and we discern no reason for departing from the holding there announced.

As to the second proposition advanced in the petition for rehearing, we are of the opinion that the petitioner has either misread or misconceived the holdings in the greater number of those authorities on which he relies to sustain his contention. His contention is that the appellant Smith could not challenge the validity of respondent's deed because Smith was not a party to the transaction involving the purchase of the note and mortgage and the defense of champerty can be invoked only by a party to the champertous agreement in a proceeding where such contract is sought to be enforced.

After a further extensive research and a meticulous reexamination of the authorities dealing with this question, we are confirmed in the opinion that a majority of the authorities approve and sustain the rule that while a third person may not take advantage of champerty as against the original owner of a chose in action, that defense is available to a third person in an action brought by a champertous assignee thereof. This rule is, in our

judgment, a rule of reason and logic, since the assignee, to establish his right to bring the action, must predicate that right upon the champertous contract.

In Galbraith v. Payne, 12 ND 164, 96 NW 258, an action to quiet title, this court said: "Section 7002 (Section 12–1714 RC 1943) makes it a misdemeanor for any person to convey any pretended title to lands, unless he or those under whom he claims have been in possession or have taken the rents and profits for one year before his conveyance. The deed upon which the plaintiff relies to establish his title was executed in violation of this section. It was, therefore, void, as contrary to the express provisions of the statute, and contrary to the policy of the law of this state as expressed in said section. See section 3920, Rev. Codes (Section 9–0801 RC 1943)." And the court held that the plaintiff could not recover as against the defendant who was in adverse possession when the conveyance to plaintiff was executed. This holding has been approved and followed in a great many cases in this court. Among the latest of these cases are Robertson v. Brown, 75 ND 109, 25 NW2d 781; and Sailer v. Mercer County, 75 ND 123, 26 NW2d 137. Clearly, insofar as the effect of a violation of Section 12–1714 is concerned, it is identical with the effect of a violation of Section 12–1719 with which we are here dealing. See also Hudson v. Sheafe, 41 SD 475, 171 NW 320. And this is at least the implication of our holding in Woods v. Walsh, 7 ND 376, 75 NW 767; and in Starke v. Wannemacher, 32 ND 617, 156 NW 494, 4 ALR 167. See also in this connection Colville v. Small, 22 Ont L Rep 426, 19 American and English Annotated Cases 515, and authorities cited in note; Prosky v. Clark, 32 Nev 441, 109 Pac 793, 35 LRA NS 512, and authorities cited in note; 10 Am Jur 572; 14 CJS 382.

The petitioner, in support of his contention, relies among other cases upon Burnes v. Scott, 117 US 582, 29 Law Ed 991, 6 Sup Ct Rep 865; and Woods v. Walsh, supra. But in Woods v. Walsh, Judge Wallin writing the opinion, said "The statute in this state has singled out certain agreements which were champertous at common law, and declared that the same are misde-

meanors. See Revised Codes, (1895) sections 7008–7013. (Section 7008 is now found in the 1943 Codes as Section 12–1719.) The case at bar. reveals no features which bring it within either of the sections we have cited." In Woods v. Walsh the action was brought by the original owner of the cause of action. The agreement between plaintiff and his attorney to prosecute the action was champertous. The court held that in such case the defense of champerty was not available to a third person who was not a party to the champertous agreement. And in the opinion on petition for rehearing the court further said "The authorities which have controlled this court in deciding this case, and which are cited in the opinion, go to the extent of holding that a champertous agreement made between the plaintiff and another person, which agreement is independent of the contract sued upon, can never operate to defeat an action which is based upon a valid claim which is not tainted with the stigma of champerty." That is, in this Woods case the champertous agreement was between Woods and his attorney, and this being so, Walsh, the maker of the notes could not raise the issue of champerty in an action brought by Woods against him to recover thereon. The court among other authorities cites Hilton v. Woods, LR 4, Equity, 432; and Keiper v. Miller, 68 Fed 627, construing Burnes v. Scott, supra. Hilton v. Woods was a case identical with the case in Woods v. Walsh, and so also was Burnes v. Scott. In Keiper v. Miller, the suit was brought by an assignee to whom the cause of action had been assigned. The court held that the agreement to assign constituted champerty and the action should be dismissed. Dallas, Circuit Judge, writing the opinion, considered and construed Burnes v. Scott and Hilton v. Woods, and in effect said that these cases were consistent with and in fact supported the holding in the Keiper case.

The case of Prosky v. Clark, 32 Nev 441, 109 Pac 793, 35 LRA NS 512 also is cited and relied upon by the petitioner. This was an appeal from an order granting a motion for nonsuit. The action was brought by the appellants, Prosky and Clark, as plaintiffs. The court said: "The motion for nonsuit was granted upon the sole ground of an alleged champertous con-

tract entered into between the appellants prior to the commencement of the action under the provisions of which the said appellant Winfield Scott Prosky was granted a one-half interest of the property rights of the said appellant George Hafer in the property in controversy.

"In the view we take of this case, it is unnecessary to determine the question whether the agreement entered into between appellants Prosky and Hafer was in fact champertous, nor (or) to determine the extent to which the doctrine of champerty prevails in this state." The court then went on, and after citing numerous cases, in the greater number of which the facts were similar to those in Burnes v. Scott and Woods v. Walsh, said: "conceding, for the purposes of this case, that the contract between Hafer and Prosky was void for champerty, only the alleged right of action of Prosky would be affected. All the right of action was held either by Hafer alone, or by Hafer and Prosky jointly. In either event, a motion for a nonsuit could not be supported upon the theory that the conveyance or assignment from Hafer to Prosky was void for champerty." So it seems to us that Prosky v. Clark is an authority of little, if any, value in support of the petitioner's contention.

Now as to the third contention. To restate the facts: In the instant case the petitioner procured an assignment of the mortgage on the premises here involved. The appellant Smith had acquired a tax deed to these premises and was in possession thereof under color of this deed. The assignment challenged was purchased contrary to the provisions of Section 17–1719 and was champertous. The petitioner brought a hybrid action to foreclose the mortgage and to quiet the title as against the appellant's tax deed. She demurred. The court sustained the demurrer and dismissed the case as against her. Thereafter the petitioner had judgment of foreclosure. The premises were sold under that judgment and petitioner, purchasing at the sale, acquired the deed under which he now claims. His contention is that in the foreclosure action, based upon the mortgage thus assigned, the court, having ordered judgment of foreclosure, necessarily must have found him to be the owner of the mort-

gage and accordingly that his purchase of the assignment was valid. He further contends that Smith, having then had an opportunity to challenge the validity of the purchase of the assignment and having failed to do so, is now barred from interposing that challenge; that the attack now made by Smith is collateral and cannot be sustained. There is no substance to this contention. No appeal was taken from the action of the court in dismissing the case against Smith. Thereafter she was no longer a party. As to her, the court had no jurisdiction. The purchase of the assignment was champertous and therefore void, but no issue as to its validity was raised in the foreclosure proceedings. The representatives of the mortgagor, the other defendants having defaulted, were the only ones who might have raised it, but they did not do so. They stipulated that the judgment of foreclosure might be entered so long as they were not charged thereby for a deficiency or for costs. In its findings the court recited that the action had been dismissed as to Smith, but made no finding and stated no conclusion as to the validity of the purchase of the assignment. The court evidently had no knowledge of its invalidity, and did not pass upon that question. Therefore the judgment entered in the foreclosure action is no more binding upon Smith than it is upon any other person not a party to the proceeding. Accordingly, since the contract of purchase was void, and Smith was not concluded by the judgment, as to her it is subject to collateral attack. See Rasmusson v. Schmalenberger, 60 ND 527, 235 NW 496; Christenson v. Grandy, 46 ND 418, 180 NW 18; Freeman on Judgments, 5th Ed, p 601 et seq.

Petition denied.

BURKE, MORRIS and CHRISTIANSON, JJ., and GRONNA, Dist. J., concur.