# MARY F. DOEBBELING v. MIRIAM V. HALL et al., Appellants.

### Division One, July 30, 1925.

1. **ACCRETIONS: Riparian Owner: To River Bank.** The riparian owner on a navigable stream has title to the bank, or low water mark of the river's waters, and no further.

2. ————: ————: **By Deed or Limitations.** Whether the riparian owner acquired title by deeds or by adverse possession, accretions to his riparian lands belong to him.

3. ————: **Washed Away and Reformed: To River Bank Only.** Although a particular tract may not be riparian or have riparian rights, that is, although it may not be bounded by the river, when surveyed and patented, or when acquired by the owner, if the land intervening between it and the river bank is afterwards cut away by river waters, and it thus becomes riparian, and the river waters later recede and thereby accretions are added to it, they become a part of it and belong to its owner. Although the accretions may extend, from so much of the tract as remains, over and beyond its original surveyed boundary line, and over the part washed away, they belong to the remaining part of the tract not washed away. Accretions belong to the land in front of which they form, although the then riparian tract at a former date did not border on the river. Accretions can be added only to riparian tracts; that is, they must begin to form against lands bordering or bounded by the river water at the time they begin to form, and extend from such border towards the river waters.

4. ————: **Apportionment: According to Frontage.** In apportioning accretions among adjoining riparian owners, the rule is that the line of the old river front shall be measured and the river frontage of each riparian owner be determined, and then each riparian owner on the original river front shall be entitled to his proportionate part of the new river front.

5. ————: **To Reformed Tract.** If a surveyed tract bordering on a navigable stream is entirely washed away, and later the river recedes, thus restoring the surface of the tract, the original owner of such tract cannot claim the made lands as accretions.

6. ————: **Apportionment: Right to Old Survey.** Where a portion of a surveyed tract has been washed away, and the accretions have

been apportioned among the riparian owners according to the true rule of frontage, etc., the owner of the remaining portion of the tract is not entitled to all the "made" lands within the extended lines of the old survey, if thereby the rule of apportionment is violated. The lands having been submerged the old survey lines and descriptions disappear, and the riparian owners are entitled to such proportion of the accretions as his old river frontage bears to the new river front, and the old survey lines cannot be used to carve out a tract that intercepts and crosses the accretions properly apportioned to others.

7. INSTRUCTION: Error in Use of Word: West for East. Mere error in the use of a word in an instruction, which is necessarily patent to both court and jury, is not reversible error, but is to be classed as a mere accident or clerical mistake. In the trial of a suit for accretions to lands in Holt County formed by the Missouri River a reference in the instructions to them as accretions to the "west" bank of the Missouri River was harmless, for all persons must know that "east" was intended.

Corpus Juris-Cyc. References: Adverse Possession, 2 C. J., Section 481, p. 227, n. 66, 67. Estoppel, 21 C. J., Section 23, p. 1065, n. 68. Navigable Waters, 29 Cyc. p. 349, n. 78; p. 351, n. 88; p. 352, n. 93; p. 353, n. 4; p. 356, n. 30. Trial, 38 Cyc. p. 1595, n. 5.

Appeal from Holt Circuit Court.—*Hon. Edward E. Porterfield,* Special Judge.

AFFIRMED.

*J. B. McGilvray, F. G. Warren, A. M. Tibbels* and *B. G. Pyle* for appellants.

(1) The verdict is against the law under the evidence. Minton v. Steele, 125 Mo. 181; Crandall v. Allen, 118 Mo. 403; Cooley v. Golden, 117 Mo. 59; St. Louis v. Rutz, 138 U. S. 242; Frank v. Goddin, 193 Mo. 395. (2) The court erred in refusing instruction lettered "F" on the part of the defendants. Cases above. (3) The court erred in giving instructions numbered 1, 2, 3, 4, 5, 6, 7 and 8, inclusive, and each of said instructions given on the part of plaintiff. Grady v. Royar, 181 S. W. 428; DeLassus v. Faherty, 164 Mo. 361; Frank v. Goddin, 193

Mo. 395; State v. Johnson, 255 Mo. 281; Althoff v. St. Louis Transit Co., 204 Mo. 166; Burdoin v. Trenton, 116 Mo. 358; Allen v. Claybrook, 58 Mo. 124; Stegman v. Berryhill, 72 Mo. 307. (4) The court erred in refusing competent and material testimony offered on the part of the defendants. Minton v. Steele, 125 Mo. 181; Crandall v. Allen, 118 Mo. 403; Cooley v. Golden, 117 Mo. 59; Hobart-Lee Tie Co. v. Grabner, 219 S. W. 975; Frank v. Goddin, 193 Mo. 395.

*W. E. Bissett* and *H. B. Williams* for respondent.

(1) The verdict is for the right party under the law and the evidence. Chinn v. Naylor, 182 Mo. 583; Frank v. Goddin, 193 Mo. 394; Crandall v. Allen, 118 Mo. 410; Benne v. Miller, 149 Mo. 228; Naylor v. Cox, 114 Mo. 243; Widdecome v. Chiles, 183 Mo. 200; 2 C. J. p. 227, sec. 481, note 67; Barney v. Keokuk, 94 U. S. 228; Cooley v. Golden, 117 Mo. 47. (2) The court committed no error in refusing Instruction F on part of defendant. Cases above. (3) The court committed no reversible error in giving instructions numbered 1, 2, 3, 4, 5, 6, 7 and 8. Chinn v. Naylor, 182 Mo. 583; Frank v. Goddin, 193 Mo. 394; Benne v. Miller, 149 Mo. 228; Widdecome v. Chiles, 173 Mo. 200; Crandall v. Allen, 118 Mo. 403; Naylor v. Cox, 114 Mo. 243. (4) Defendants having asserted title and possession in themselves, adverse to plaintiff, they cannot, upon the theory that they were plaintiff's tenants, defeat plaintiff's right to recover in this action. Lyon v. Lemaster, 103 Mo. 612. (5) Where on the whole record the verdict is for the right party errors, if any, in instructions will be disregarded, and appellate court will not reverse or set aside the judgment for such errors. Whitehead v. Atchison, 136 Mo. 491; R. S. 1919, secs. 1513, 1276; Fitzgerald v. Baker, 96 Mo. 665; Henry v. Grand Ave. Ry. Co., 113 Mo. 538.

GRAVES, J.—We could take the statement of either side to this controversy, and have a fair basis for the

determination of the legal questions involved. We think best to state the case in our own way.

The action is one in ejectment, wherein is asked $300 for the unlawful detention of the lands involved, and for an assessment of monthly rents and profits at $25 per month. The subject-matter of the controversy is about seventy-four acres of accreted lands in Holt County. There is but little out of the ordinary in the petition, except that it pleads the reasons for plaintiff's claim to these accreted lands. After describing by metes and bounds the lands claimed by plaintiff, the petition thus proceeds:

"Which said lands were formed and made by accretions deposited by the Missouri River by gradual and continued deposits upon, along, and against the shore line of said river, and to and against the following described deeded riparian land, which deeded lands, during all the times herein mentioned, were owned by and in possession of this plaintiff and her grantors, to-wit:

"The north half of the north one-fourth of the northeast quarter of Section 18, in Township 62, of Range 40, in Holt County, Missouri; and for reasons aforesaid the accretions so made and formed as aforesaid became and are a part of the deeded riparian land aforesaid; that aforesaid accreted lands were, prior to 1918, wild and uncultivated lands.

"And plaintiff being so entitled to the possession thereof, defendants afterwards, to-wit, on the 1st day of April, 1919, entered into and upon such premises and unlawfully withholds from plaintiff the possession of the aforesaid accreted lands, to plaintiff's damages in the sum of three hundred dollars."

As indicated the prayer was for possession of the land and for the damages and rents above stated. Originally the action was against Benjamin Quimby, Homer B. Quimby and John L. Quimby. Upon her application Miriam V. Hall was made a party defendant. Benjamin Quimby died, and his heirs were then made parties defendant, and hence the present title of the case.

The answer filed by Miriam V. Hall is short, and reads:

"Comes now the defendant, Miriam V. Hall, and for her separate answer to the petition of plaintiff herein filed denies each and every allegation therein contained.

"And for further answer and a further defense, this defendant says that on the 26th day of November, 1917, the defendant Benjamin G. Quimby entered into a lease agreement with this defendant, Miriam V. Hall, by the terms of which agreement this defendant leased the land described in plaintiff's petition, or at least a portion thereof, to the defendant Benjamin G. Quimby, for the term of five years, commencing on the first day of March, 1918, and ending on the 28th day of February, 1923; that the said Benjamin G. Quimby, one of the defendants herein, agreed to pay this defendant as rent of said land one-third of all the grain raised on the said premises for the first year, and one-half of the grain raised thereon for the remaining term of said lease; and that the defendants John L. Quimby and Homer B. Quimby have rented portions of this land as sub-tenants of their co-defendant, Benjamin G. Quimby.

"And for further answer and defense to plaintiff's petition, this defendant states that if the land described in plaintiff's petition accreted to plaintiff's land, as in plaintiff's petition alleged, plaintiff's cause of action did not accrue within ten years before the commencement of this action.

"Defendant further states that this defendant, Miriam V. Hall, has been in open, notorious, peaceable and exclusive possession of said land in plaintiff's petition described, under color of title, claiming to own the same and paying taxes thereon, for more than ten years before the filing of plaintiff's petition herein, and that whatever right plaintiff may have had in said land, if any, is long since barred by the Statute of Limitations.

"Wherefore, this defendant asks to be hence discharged with her costs in this behalf sustained."

The three Quimbys filed a joint answer, upon which the trial was had, as follows:

"Defendants, for their amended answer to plaintiff's petition, admit that they occupy said land described in said petition, but state that they are tenants upon said land by virtue of a written lease from M. V. Hall; that they have been in possession of said land under said lease since the 1st day of March, 1918; and are entitled to the possession of said land until the first day of March, 1920.

"Defendants further state that the plaintiff herein knew of the said possession and terms of said lease, and that until their crops were planted, to-wit, on or about the first day of May, 1919, they had no notice of the plaintiff's claim of title to said land; that the said plaintiff allowed defendants herein to plant said crops, knowing the terms of the said lease as aforesaid, and is therefore estopped from claiming possession of said land from said defendants until the expiration of the aforesaid lease, to-wit, March 1, 1920.

"Defendants deny each and every other allegation in the plaintiff's petition which have not been herein specifically admitted.

"Wherefore, defendants ask judgment in the above-entitled cause, and their costs in this behalf expended."

Later (in 1921) the heirs of Benjamin Quimby were made defendants in lieu of the deceased Benjamin Quimby, and by their attorney recognized the order reviving the cause as against them, and entered their appearance in the case. The record shows no reply, but this is immaterial, as the cause proceeded as if one had been filed.

Upon a trial before a jury the plaintiff had verdict for the possession of the land, which land is described in the verdict as in the petition. There was no finding as to damages for unlawful detention, or as to the value of the rents and profits. From the judgment upon such verdict the defendants have appealed. The foregoing outlines the pleadings and judgment. Of the facts later. We have quoted the answers in full, because of some questions urged in the briefs of the appellants.

Further facts are that the lands in dispute are in Section 18 of Township 62, Range 40, in Holt County. This was a fractional section when the Government had a survey made in 1840. The township was a fractional township on account of the meanderings of the Missouri River, which at this point is the line between the states of Missouri and Nebraska. Starting in at the north line of said Township 62, (in 1840) the river ran in a slight southeasterly course, but it turned and ran in a strong southwesterly course for a distance, and then turned and ran in a strong southeasterly course. At this time (survey of 1840) the north half of Section 18 was designated as Lot 1 and Lot 2. Lot 1 was the northeast quarter of the section, less what was cut off by the river. There were 138.60 acres in this lot. The south 80 of this northeast quarter was a full 80, but the north 80 (owing to a cut in of the Missouri River) had only 58.60 acres, making a total in this northeast quarter (denominated Lot 1) of 138.60 acres. In what would be the northwest quarter of Section 18, there were but 56.22 acres, and this was denominated on the Government Plat as Lot 2. The southeast quarter of Section 18 appears to be a full 160 acres, and the southwest quarter would possibly have been a full 160 acres, except (as best we can gather from the Government Plat) all these sections in Township 62 bordering on the range line to the west seem to be short sections, i. e. the west half of the sections appear to be short. The photographic copy of this original plat has such small letters and figures, that we have found it difficult to make them out by the use of a strong reading glass. The statements of both parties to the case are in accord with the following from respondent's statement:

"Offer was made by the defendant, Miriam V. Hall, to show the record title in her to Lot 2, being the fractional northwest quarter of Section 18, and to the northeast quarter of the southwest quarter of said section, all of which evidence, over the objections of the defendants, was excluded by the court.

"The record shows in the year 1840, a Government survey was made of Section 18, Township 62, Range 40, and at that time Lot 2 of the northwest quarter, and Lot 1 of the northeast quarter bordered on the east bank of the Missouri River (defendant's Exhibit 1; also plaintiff's Exhibit A—The line marked 'original bank surveyed by Government in 1840' thereon, showing location of east bank of River in 1840), i. e., the Missouri River formed the west boundaries of said tracts; that thereafter the river began to cut to the east and continued to so cut until it cut east to the line marked in plaintiff's Exhibit A 'Easterly Erosion Line.' About the year 1895 it had cut away Lot 2, the west one-half of Lot 1, and was running in a northwesterly and southeasterly direction across the northeast quarter of Section 18, leaving approximately eighteen acres in the north one-half of the northeast quarter of the northeast quarter, thirteen acres in the south one-half of the northeast quarter of the northeast quarter, and eight and three-fourths acres in the northeast corner of the south one-half of the northeast quarter. That about the year 1895 or 1896 the river commenced to build back to the west until at the time this suit was instituted it had built back made lands occupying practically all of the space formerly occupied by Section 18 and all of Lot 1 of the northeast quarter, the south one-half of the northeast quarter and Lot 2 of the northwest quarter before said original land had been washed away by the Missouri River, and the matter in controversy being the respective rights of the plaintiffs and defendants to the possession of the land described in plaintiff's petition, the defendant Miriam V. Hall (and the other defendants as her tenants) claiming the title and right of possession of the newly made accreted lands to her original boundaries before they were washed away by the Missouri River, together with the accretions thereto; the plaintiff claiming the title to the accretion lands described in her petition, which intersects the made land occupying the space formerly occupied by the original land claimed by defendant Miriam V. Hall, under her record title, before

such original land was washed away by the Missouri River.''

There is a further statement in respondent's brief that Miriam V. Hall further claims title to the land in question as an accretion to the eight and three-fourths acres mentioned above as being in ''the northeast corner of the south half of the northeast quarter,'' but the statement of appellant says nothing about this claim in express words. That part of appellant's statement is short, and reads:

''The record title to the north one-half of the northeast quarter of the northeast quarter of said Section 18 was shown to be in Mary F. Doebbeling, and the record title to the south one-half of the northeast quarter was shown by the record to be in the defendant, Miriam V. Hall. Offer we made by the defendant, Miriam V. Hall, to show the record title in her to Lot 2, being the fractional northwest quarter of Section 18, and to the northeast quarter of the southwest quarter of said section; all of which evidence, over the objections of the defendants, was excluded by the court.

''The record shows that in the year 1840 a Government survey was made of Section 18, Township 62, Range 40, and at that time Lot 2 of the northwest quarter, and Lot 1 of the northeast quarter bordered on the east bank of the Missouri River (defendant's Ex. 1) i. e., the Missouri River formed the west boundaries of said tracts; that thereafter the river began to cut to the east and continued to so cut until about the year 1895, at which time it had cut away Lot 2, the west one-half of Lot 1, and was running in a northwesterly and southeasterly direction across the northeast quarter of Section 18, leaving approximately eighteen acres in the north one-half of the northeast quarter of the northeast quarter, thirteen acres in the south one-half of the northeast quarter of the northeast quarter, and eight and three-fourths acres in the northeast corner of the south one-half of the northeast quarter (plaintiff's Ex. A and defendant's Ex. 3). That about the year 1895, the river commenced to build

back to the west, until at the time this suit was instituted it had built back practically all of Section 18, and all of Lot 1 of the northeast quarter, the south one-half of the northeast quarter, and Lot 2 of the northwest quarter, and the matter in controversy being the respective rights of the plaintiff and defendants to the possession of the land described in the petition; the defendant Miriam V. Hall (and the other defendants as her tenants) claiming the title to her original boundaries together with the accretions thereto; the plaintiff claiming the title to the strip described in her petition, which intersects the original land owned by defendant Miriam V. Hall under her record title; and defendant claiming that, in any event, the apportionment of the accretions, as shown by the evidence, was improperly and inaccurately made, and as a consequence thereof plaintiff did not establish the right to possession of the land claimed in her petition.''

It is perhaps broad enough to cover the claim, so that both statements are in practical accord.

By oral evidence (unobjected to) and a plat from the record it is shown that there was an apportionment of accretions affecting these and others lands by the Circuit Court of Holt County, in 1904, and we may have further note to make of this, if found necessary.

The case is a law case, and absent trial error, the finding of the jury concludes, if there is substantial evidence upon which to base it. Further details are left to the opinion proper.

I. Counsel for appellants say, in their statement, that the record title to the north half of the northeast qurter of the northeast quarter of Section 18, was in the plaintiff. In addition there was evidence tending to show, and from which the jury could have well found, that she had such title by adverse possession for a period of some thirty-five years. The record title to the south half of the northeast quarter of Section 18 seems to have been conceded to be in defendant Miriam V. Hall. This was an 80-acre tract. At least the case so proceeded. Plain-

tiff claims the land in suit on the theory that it is an accretion to the north half of the northeast quarter of the northeast quarter, of said Section 18, supra. It is hard to tell from the plat whether or not this land was touched by the river. The northwest corner of it may have had a river frontage, judging from the survey of 1840. But as we have indicated there was a continuous cutting away of the lands in Section 18, until all of Lot 2 was gone, and the west half of Lot 1 was gone, and thus by this process it became riparian land, or what was left of it so became riparian lands. In 1904 the Circuit Court of Holt County established the accretions. Neither side seem to question this act. Prior to this the erosion line was so far to the east that a part of Section 17 was cut off, and this was a full section in 1840. But in 1904 the river had receded toward the west, and some accretions had been formed, but there was none to the little eight and three-quarters acres in the south half of the northeast quarter. In 1918, practically all of the original Section 18 had been re-built by accretions, so that when the accreted lands were surveyed in 1918, there were seventy-four acres given to the plaintiff as accretions to what she had left of the north half of the northeast quarter of the northeast quarter. By this same survey Miriam V. Hall got 108 acres as accretions to the eight-and-three-quarters-acre tract. But it is argued that the lands assigned to plaintiff crossed a portion of old Lot 2 in the northwest quarter of Section 18. This lot had been submerged for years between 1840 and 1918, and was until after 1904, when the court located the accretions.

It must be kept in mind that plaintiff's claim is that the lands sued for were accretions to the north half of the northeast quarter of the northeast quarter of Section 18. We are dealing with a forty-acre tract, and there would of necessity be the south half of this same forty acres lying between the land of plaintiff, before we reach the eight and three-fourths acres claimed by Miriam V. Hall as part of the south half of the northeast

quarter, which if full would have been eighty acres. With these additional facts we can discuss the legal phases of the case.

II.  Speaking of the real defendant, Miriam V. Hall, there is evidence from which the jury could well find that the river (when at its most distant point toward the east) had cut away all of defendant's lands, except this small tract of eight and three-fourths acres.  At that time she was a riparian owner of the small tract alone. Between it and plaintiff's land was the south half of the northeast quarter of the northeast quarter, belonging to Jos. H. Allen.  We shall take the first claim of defendant, and that is that at least a portion of the accreted land surveyed to plaintiff was over the spot where, at a long previous date, was old Lot 2.  The contention is, that after all of Lot 2 was washed away, and other lands became the riparian lands on the east bank of the river, the defendant can claim no portion of the accretions by reason of having been formerly the owner of the defunct Lot 2.  Defendants claim contra, and thus we have the first legal question.  This we take next.

It is well settled in Missouri that upon navigable streams (as is the Missouri River) the riparian owner has title to the river bank and no further.  The river bank may be figured at and to low water mark.  [Cooley v. Golden, 117 Mo. l. c. 47 et seq.; Cox v. Arnold, 129 Mo. 337.]

It is further well settled that accretions to deeded riparian lands become the lands of the particular owner of the deeded lands.  By deeded lands we mean lands to which the party has a straight paper title.  [Benne v. Miller, 149 Mo. l. c. 238; Cox v. Arnold, 129 Mo. 337.]

But lands, the ownership of which is acquired by adverse possession, are likewise treated.  In other words, lands acquired by a paper title and those acquired by adverse possession stand upon the same footing.  [Benne v. Miller, 149 Mo. l. c. 238; 2 C. J. p. 227; 1 R. C. L. p. 235.]

In this case, however, both paper title and title by adverse possession of the main land are shown. All original lines submerged by a navigable stream cease to exist, and thereafter the relationship of all riparian lands and the river must be determined from the then conditions (both as to the actual then riparian lands and the river frontage) and not from previous conditions, or previous relationship of the riparian lands and the river. [Naylor v. Cox, 114 Mo. l. c. 243 (at bottom of page) and l. c. 244; Cox v. Arnold, 129 Mo. 337.]

Although a particular tract of land may not be riparian, or have riparian rights, when acquired by the owner, yet if afterward the intervening land is cut away by the river (navigable stream) and the remoter tract thus becomes riparian, and later the river recedes, and accretions are added to this remote tract, such accretions belong to the remoter tract. And, this is true, although the accretions may pass over the line and the spot where the original riparian tract existed. In other words accretions belong to the land in front of which they form, and such is the law, although the then riparian tract was at a past date one not bordering upon the river bank. [Widdecombe v. Chiles, 173 Mo. l. c. 200; Cooley v. Golden, 117 Mo. l. c. 48; Gould on Waters & Riparian Rights (3 Ed.) sec. 155, p. 308; Frank v. Goddin, 193 Mo. l. c. 395.]

In the Widdecombe case, VALLIANT, J., said: "The principles there laid down are, that the accretions belong to the man who owns the land against which the deposits were made, and that they do not belong to the man who owns land against which such deposits were not made although they cover a space where his land was before the river washed it away." Judge VALLIANT, as will be seen, refers to the language of GANTT, P. J., in Naylor v. Cox, supra.

In Gould on Waters, supra, it is said: "When a fresh river changes its course and its centre, even a lot not originally riparian may become so by such change and acquire the riparian right to accretions."

This short paragraph clearly indicates that if intervening land is washed away, and the remoter tract becomes riparian, the accretions to such remoter tract inures to it.

The principle is that the accreted land must be to a riparian tract of land, and it of necessity follows that a lot or tract of land wholly washed away, cannot be added to by accretions. There are opposition authorities, but such is the Missouri rule. [1 R. C. L., p. 242, and cases cited. Footnote 7 gives the Missouri rule.]

A further vital question is the rule of apportioning accreted lands between adjoining riparian owners. The general, as well as the Missouri rule, as to the apportionment of accretions to adjoining riparian owners is that the line of the old river front shall be measured, and the river frontage of each riparian owner be determined, and then each riparian owner on the original river front shall be entitled to his proportionate part of the new river front. This court has adopted the rule of the Massachusetts court in the case of Inhabitants of Deerfield v. Pliny Arms, 17 Pick. 41, as to the apportionment of accretions. [See Crandall v. Allen, 118 Mo. l. c. 412 et seq.]

In the Deerfield case, at page 45, Chief Justice SHAW says: ''A rule which appears to us to be applicable to the present case and meets the required conditions, is found in a work of the civil law, cited by the learned counsel who opened the case for the defendants, entitled 'A Collection of New Decisions,' by Denisart, published in France in 1783. It is in the form of a dictionary, and this subject is discussed under the title, 'Attérissement.'

''The rule suggested in this work is founded upon the obvious consideration already alluded to, that in many cases, lands which border upon navigable rivers, derive a great part of their actual value from that circumstance, and from the benefit of the public easement thereby annexed to such lands, and that, being wholly deprived of the benefit of that situation would operate as a great hardship and do real injustice to a riparian proprietor,

although he should obtain his full proportion of the land measured by the surface. This injustice will be avoided by the proposed rule, in conformity with which each proprietor will take a larger or smaller proportion of the alluvial formation, and of the newly formed river or shore line, according to the extent of his original line on the shore of the river.

"The rule is, 1. To measure the whole extent of the ancient bank or line of the river, and compute how many rods, yards or feet, each riparian proprietor owned on the river line. 2. The next step is, supposing the former line, for instance, to amount to 200 rods, to divide the newly formed bank or river line into 200 equal parts, and appropriate to each proprietor as many portions of this new river line, as he owned rods on the old. Then, to complete the division, lines are to be drawn from the points at which the proprietors respectively bounded on the old, to the points thus determined as the points of division on the newly formed shore. The new lines, thus formed, it is obvious, will be either parallel, or divergent, or convergent, according as the new short line of the river equals, or exceeds, or falls short of the old.

"This mode of distribution secures to each riparian proprietor the benefit of continuing to hold to the river shore, whatever changes may take place in the condition of the river by accretion, and the rule is obviously founded in that principle of equity, upon which the distribution ought to be made. It may require modification perhaps, under particular circumstances. For instance, in applying the rule to the ancient margin of the river, to ascertain the extent of each proprietor's title on that margin, the general line ought to be taken, and not the actual length of the line on that margin if it happens to be elongated by deep indentations or sharp projections. In such case, it should be reduced by an equitable and judicious estimate, to the general available line of the land upon the river. We are not aware that in the present case any such modification will be necessary and therefore the

general rule may be applied, and will do justice between the parties.''

Chief Justice SHAW was dealing with accretions in a bend of the river, just as we are in the instant case. In Crandall's case, supra, this court also approves Gould on Waters, secs. 162, 163 and 164. These sections accord with the shortly stated rule we have announced above, as well as the rule in the Deerfield case, supra, which we quote and approve.

In 1 Ruling Case Law, sec. 21, p. 245, the rule is shortly stated thus: ''The rule which has been most frequently adopted as securing an equitable apportionment of accretions among different lot owners along rivers may be stated as follows: Measure the entire river front as it was when the lots were laid out, and note the aggregate number of feet frontage, as well as that of each lot; then measure a line drawn as nearly as may be with the middle thread of the stream opposite the shore line so measured; then divide the thread line into as many equal parts as there are lineal feet in the shore line, giving to each proprietor as many of these parts as his property measures in feet on the shore line; and then complete the division by drawing lines between the points designating the lot or parcel belonging to each proprietor both upon the shore and river lines.''

While the author speaks of the thread of the stream, such would not apply in this State as to navigable rivers, as it does in some states. It would apply to non-navigable streams in Missouri. In Missouri, upon navigable rivers, low water mark is the river line of riparian owners. [Frank v. Goddin, 193 Mo. l. c. 394.] One purchasing lands bounded upon one or more sides by a river takes the chance on losing a part or all of his land, as well as the chance of adding thereto by accretions. In other words, a river boundary line is a changeable line, and subject to being wiped out altogether, so far as a particular riparian tract is concerned. [Frank v. Goddin, supra; Naylor v. Cox, 114 Mo. l. c. 243-244.] But

this is somewhat adrift on the immediate question of apportionment. It goes to other rules stated supra.

The order of apportionment we have announced, and announced in Crandall's case, supra, finds support in the following further cases and texts: Gorton v. Rice, 153 Mo. l. c. 685; 29 Cyc. 353. See also the general principles stated in cases in Missouri, cited above under this and other paragraphs. For other cases outside of Missouri see especially Kehr v. Snyder, 114 Ill. l. c. 316, and cases cited, and City of Peoria v. Central National Bank, 224 Ill. l. c. 52 et seq., and cases cited therein.

From the foregoing rules of law, it follows that Miriam V. Hall cannot claim title through her defunct Lot 2 in the northwest quarter of Section 18, because it had been totally washed away long prior to the beginning of these accretions. Neither can Hall claim title through accretions to the eight-and-three-fourths-acre tract, because there was an intervening riparian owner between defendant's small tract of riparian land and the riparian land of the plaintiff. Neither did this defendant in person or through her tenants show title by adverse possession. Hall and the other tenants were mere squatters upon the accretions now claimed. Absent procedural errors, the judgment should be affirmed.

III. Defendant Hall not only offered to show title to Lot No. 2, which we have mentioned, but she likewise offered her title to all of the south half of the northeast fractional quarter of Section 18. These were rejected by the court, and of this defendants complain. We have sufficiently disposed of the claim as to Lot 2. There was no dispute that Lot 2 had been swept away for years prior to 1895, when the river first began to recede toward the west, or rather to the south and west. When these accretions began to form, there was no Lot 2. Under such state of facts the proof of a record title, under rules we have adopted, was properly rejected. The same is true of lands formerly owned by Hall in the southwest quarter of Section 18. It was washed away.

The claim as to the south half of the northeast quarter proceeds upon the theory that Hall was entitled to all accretions within her original title lines, and perhaps further to the accretions to such accretions. All this because this defendant claimed the little triangular tract of eight and three-fourths acres in the extreme northeast corner of such south half of the northeast quarter of Section 18.

In 1904 when the circuit court apportioned, by decree and plat therein, the accretions, there were no accretions to this small triangular tract, the long side of which was then riparian. There were accretions to the north half of the northeast quarter of the northeast quarter, as well as accretions to the south half of this same forty acres. We say forty acres just as a means of identifying the tract, but it was not then a full forty. The plat of apportionment in the decree of the court, and in evidence here, shows the river line in 1904, and the three then riparian tracts, i. e., plaintiff's tract, the James H. Allen tract, and the defendant Hall's triangular tract of eight and three-quarters acres. As said there were then no accretions to the Hall tract, but there were to the tracts of Allen and plaintiff. This plat indicates an apportionment of the accretions according to the rule of apportionment that we have adopted. Later other accretions came, and then for the first time there were accretions in front of the long side of defendant Hall's small triangular tract, so that when surveyed by Wm. M. Morris, surveyor, in 1918, there was added to this tract 108 acres of accretions.

It is true that the land in dispute intersects or crosses at least a portion of the south half of the northeast quarter, as it has been filled out by accretions, but the rules of apportionment we have herein above adopted make the defendant's original title wholly immaterial. Plaintiff is not denying Hall's riparian ownership of the small triangular tract, but this was all defendant had when the accretions began. Under the rule the accretions must be apportioned according to the river frontage at the

time the accretions began. Those to Hall's frontage seemingly did not begin until after 1904, because none such appears on circuit court plat of 1904. To give Hall any portion of this tract in dispute would not only violate the rule of apportionment as to the method of fixing the side lines to accreted lands, but it would go further, and give to Hall lands which accreted to the shore front of both Allen and the plaintiff. It is only when the original lines of the land (when extended) makes the apportionment, substantially according to the rule, can such original Government lines be recognized at all. So under the principles of apportioning accretions, the defendant Hall was only entitled to the accretions to her shore line of this small triangular tract. The trial court committed no error in the exclusion of all this evidence. When the river reached its utmost movement to the east, there was nothing left of the south half of the northeast quarter of Section 18, but this eight and three-fourths acres. There were no lands left in the northwest quarter, none in the southwest quarter, and none in the southeast quarter. In fact, a large tract of the southwest quarter of Section 17 and a corner tract of land in the southwest corner of the northwest quarter of Section 17 (the section to the east of 18) had become riparian.

It is urged by defendants as to this point, as it was to the rule of apportionment, that the case of Minton v. Steele, 125 Mo. 181, supports the doctrine of their Instruction F, supra. We do not so read that case. There is nothing in that case to indicate that the accreted lands were not to the water front. He says that while a part of plaintiff's land was washed away, yet plaintiff still remained proprietor of a large tract on the bank. From what he says later, we take it that a part of the whole tract (within one line of the survey to the other) remained riparian. If so then accretions to it would follow the title of the remaining tract and if the accretions (so formed) filled out the original Government lines, and more, as is said in the case, then the rule which we have announced does not necessarily conflict with that case.

In fact, the following paragraph in the opinion would in-
dicate that it mattered not what rule you applied, Min-
ton was entitled to the land.   Here is his language, at
page 191:

"Whether that claim should properly rest upon the
*force of the original title, or be referred to the general
law of accretion,* we are not required to investigate.
Under other instructions the jury found as a fact that
the accretions in the old bend did not begin at the de-
fendant's land on the north, and extend in a southeasterly
course until opposite plaintiff's property on the main
land."

There is no special approval of any instruction in
that case.   Again it is urged that GANTT, P. J., in the
Crandall case, supra, approved Instruction 5 (118 Mo. l.
c. 407) which counsel claims accords with their Instruc-
tion F in this case.   Judge GANTT did set out the instruc-
tions upon both sides in that case, but gave no special
approval of said Instruction 5, supra.   On the contrary
Judge GANTT in the Crandall case adopted the rule in
the Deerfield case from Massachusetts, which is con-
trary to Instruction 5 in Crandall's case.   Counsel for
defendant's in this case also urge that Frank v. Goddin,
193 Mo. l. c. 395, supports their refused Instruction F.
We do not so read that case, but read it to the opposite.
See page 394 et seq., where he says that in Naylor v.
Cox, 114 Mo. l. c. 243-4, this court adopted the following
from Welles v. Bailey, 55 Conn. l. c. 317, thus: "All
original lines submerged by the river have ceased to
exist; the river is itself a natural boundary, and every
changing condition of the river in relation to adjoining
lands is treated as a natural relation and is not affected
in any manner by the relations of the river and the land
at any former period."

So that we reiterate that there was no error in refus-
ing said Instruction F, but of this more particularly later.

IV.   The motion for new trial complains (1) that
the verdict is against the evidence, and against the law

and evidence; (2) the refusal of testimony which we have discussed, supra; (3) the admission of incompetent evidence for plaintiff; (4) refusal of defendant's Instructions A, B, C, D and E, which are demurrers to the evidence, (5) the giving of all of plaintiff's instructions, and (6) the refusal of defendant's Instruction F. The instructions for the plaintiff are in exact accord with what we have said, supra, about accretions, and the manner of apportioning them. The one on the apportionment of accretions conforms to what is said in the Deerfield case, the Crandall case, and the texts which we have cited. There is complaint about the use of the word "west" instead of "east," which we will discuss later. It appears in two instructions numbered 1 and 6 for plaintiff. The instructions are proper, and absolutely in accord with what we have written, unless the use of the word "west" makes them so erroneous as to justify a reversal. But as said, this is left for another paragraph.

The first part of Instruction F deals with the eight and three-quarter acre tract, and reads:

"The court instructs the jury that if a tract of land, patented by the U. S. Government to a person, and which has a shore line on a navigable stream, is partially, but not wholly, washed away by the gradual action of said stream, and thereafter, while any portion of such tract remains, the said stream gradually restores or makes back to such remaining portion, all the land it has theretofore washed away, and additional accretions thereto, then the owner of said tract, as originally patented, or his successors in title, has the title and is entitled to the possession of all the land included within the original lines and corners covered by the Government patent, and also to all accretions to said shore line as it was when first acquired by the patent."

The second portion deals more particularly with Lot No. 2. The point especially made is that if Lot 2 was contiguous when patented, and if any portion of such contiguous lands were left, and the whole thereafter

restored, then if the jury find that defendant Hall is successor in title to such former contiguous tracts, the finding must be for defendants, and plaintiff cannot recover. What we have said as to the general rules relative to accretions, shows the error of defendant's Instruction F. There was therefore no error in its refusal. Such instruction does not accord with the doctrine that a riparian owner's rights are measured by his water front at the time the accretions began to form. The only water front that defendant Hall had was the triangular tract of which we have spoken.

The demurrers were all properly overruled, because there was ample evidence from which the jury could find that the land sued for was gradually built up against the old shore line of the plaintiff and that the circuit court in 1904 and the survey of 1918 fairly followed the rule of apportionment as we have heretofore discussed such rule.

V. As said in two of the plaintiff's instruction the wrod "west" was used where the word "east" should have been used, and this is said to have made these instructions misleading, improper on the evidence, and erroneous. Instruction 1 for plaintiff uses this language: "The jury are instructed that the deeds read in evidence in behalf of plaintiff constitute color of title to the land lying on the *west* bank of Missouri River in Section Eighteen (18), as described in the evidence, etc." and at the close of the instruction it says: "was made to and against plaintiff's shore land by the gradual and imperceptible deposit of earth, sand and sediment against the *west* bank of the Missouri River," and etc. In the middle of the instruction was a description by metes and bounds of the land in dispute, described as being in Holt County, Missouri. Instruction 6 also uses the phrase, "was formed as an accretion to the *west* bank of the Missouri River." The use of the word "west" in these instructions was clearly a slip of the pen. No deeds in evidence were to lands on the west bank of the river. No evidence was introduced as to lands on the west bank of

the river. Lands upon the west bank were in Nebraska, and not in Holt County, Missouri. Every scintilla of evidence (both record and oral evidence) was as to lands on the east bank of the river. No juror could have been mislead (under the facts of this case) by these "slips of the pen" in drawing these instructions. They knew, as this court knows, that the word "east" was intended, and the use of the word "west" was a pure accident. In this case it was most certainly harmless.

We are cited to the case of Grady v. Royar, 181 S. W. 428, by RAILEY, C., while sitting in Division One. He did, with complicated facts, rule that the use of "west" for "east" made the instruction misleading. The complicated facts of locations of tracts of land as to the river and a slough, may have justified the ruling, but if so the case is distinguishable from this case. Judge RAILEY relies upon an opinion by BOND, J., in White v. Mo. Pac. Ry. Co., 178 S. W. 83. The White case is no authority for the express ruling made by Judge RAILEY, to the effect that we must take the record as we find it, in so far as an instruction is concerned. BOND, J., was speaking of the wording of a question to an expert witness, and that the word "exclude" should have been used instead of "include." But whether the BOND opinion was a proper basis for the RAILEY opinion, we need not discuss further. If Judge RAILEY intended to rule that a mere error in the use of a word in an instruction, which error was of necessity, under all the facts, patent to both court and jury, then the opinion is wrong, and Division One has the power to right its own wrong, without calling upon Court in Banc.

No jury or court could be misled, under the facts of this case, by the mistake use of "west" where "east" was intended.

VI. What we have said as to the other instructions of plaintiff answers all other objections of the defendants.

Something is said that the defendants (other than Hall) were tenants of plaintiff in 1918, and no notice was

given them to quit. Those defendants by their answer, which we have purposely set out in full in our statement, make no such claim, and that question is not in the case. In this they are estopped by their answer, wherein they specifically claim as tenants under defendant Hall. Further, they are in no way harmed, because no damages were assessed for unlawful detention, and no rents and profits were assessed, and their so claimed lease has long since expired. The case was well tried below, and the judgment is affirmed. *Ragland, P. J.,* and *Atwood, J.,* concur.