Raymond HOGUE, Edward Hogue, Roy Small, Thore Naaden, A. R. Tavis, Paul Wachter, and Eugene Wachter, Plaintiffs-Appellants,

and

The State of North Dakota, Intervenor-Appellant,

v.

Ervin BOURGOIS, Milan G. Ward, Birlea O. Ward, Robert G. Ward; Imogene Ward Christensen, Claire Ward Engelhardt, and Steve Ward, Heirs of R. D. Ward, deceased; Calile Campbell, Stephen Callaway, James Callaway and Virginia Callaway Williamson, Heirs of Mrs. J. C. Calloway, deceased; Mrs. A. Lincoln Shute, Albert Bourgois, Martha Schmidt, Christine B. Bechill, Paul Bourgois, Ruth Bourgois, Ervin Bourgois, as Guardian of the Person and Estate of Ruth Bourgois, Incompetent, Sidney Bourgois, Gilbert Bourgois, Helen Bourgois, Josephine Hoge, Ira Hoge, William Hoge, Clara Fristad, Paul Hoge; Norman Hoge, Robert Hoge, Marlys Hoge Riker, Jerome Hoge, Catherine E. Morris, as Guardian of the Person and Estate of Jerome Hoge; May Alice Sims, Henry Entzel, Mathilda Entzel, Delilah Wetzstein, Katherine Borden, James T. McGillic, Blossom L. McGillic, Claude A. Henderson, Charles Zachmeier, Soder Investment Co., a corporation, Northern Pacific Railway Company, a corporation, Continental Oil Company, a corporation, The Pure Oil Company, a corporation, The Carter Oil Company, a corporation, Phillips Petroleum Company, a corporation, Shell Oil Company, a corporation, Federal Farm Mortgage Corporation, a corporation, Morton County, a public corporation, all persons unknown claiming by, through, or under the following deceased persons, viz., Martin Bourgois, Aldyth Ward, Gus Hoge, and Helene L. Bourgois, and all persons unknown claiming some interest or estate in or lien or encumbrance upon the property described in the complaint, Defendants-Respondents.

No. 7469.

Supreme Court of North Dakota.

May 11, 1955.

Rehearing Denied July 1, 1955.

Strutz, Jansonius & Fleck, Bismarck, for appellants.

Charles D. Cooley, Mandan, for plaintiffs-appellants.

Paul Benson, Atty. Gen., and C. E. Brace, Asst. Atty. Gen., for intervenor and appellant the State of North Dakota.

Rausch & Chapman, Bismarck, for defendant Ervin Bourgois, individually and on behalf of all the heirs of Martin Bourgois, deceased.

C. L. Young, Bismarck, for defendants Milan G. Ward, Birlea O. Ward, Robert G. Ward and the heirs of R. D. Ward, the heirs of Mrs. J. C. Calloway, Mrs. A. Lincoln Shute, and the heirs of Aldyth Ward.

Register & Thompson, Bismarck, for defendant Soder Investment Company.

Cox, Cox, Pearce & Engebretson, Bismarck, for defendants Continental Oil Company, The Pure Oil Company, The Carter Oil Company and Phillips Petroleum Company.

EUGENE A. BURDICK, District Judge.

This is an action to quiet title and to determine adverse claims to a tract of land surveyed and platted as "Bourgois Island" in Burleigh County. The plaintiffs allege title by appropriate conveyance from the State of North Dakota by its Board of University and School Lands in June, 1950 and contend that Bourgois Island formed as an island in the Missouri River and grew to its present size by the accretion of alluvial deposits. The defendants by answer deny the allegations of owner-

ship by the plaintiff and allege ownership of Bourgois Island by virtue of various grants in the chain of title from the patentees of the federal government. The action was tried to the Hon. George Thom, Jr., District Judge, without a jury. The district court made its findings of fact, conclusions of law and order for judgment and judgment was entered thereon in favor of the defendants and against the plaintiffs. The plaintiffs have perfected an appeal from the judgment and have demanded a trial anew in this court.

The uncontroverted testimony shows that the Missouri River in the vicinity of the lands in controversy flows in a southerly direction. In this locality the west bank of the river is Morton County and the east bank is Burleigh County. At the time of the original government survey in 1876 the riparian lands on the east bank were Lots 1, 2, 3, and 4 of Section 27, Lots 1, 2, and 3 of Section 34, and Lot 1 of Section 33 in Township 140 North of Range 81 West of the Fifth Principal Meridian and Lot 1 of Section 4 in Township 139 North of Range 81 West of the Fifth Principal Meridian. These lots were surveyed by the federal government and meandered on the plat to conform to the flowage of the Missouri River. The lots claimed by the defendants were eventually patented and conveyed in varying interests to the defendants.

In about the year 1904 a sand bar formed in the Missouri River immediately to the west of Lots 1, 2, and 3 of said Section 34. This bar formed by the deposit of alluvial accretions to the bed of the stream overlying stratum of earth which had never previously been patented or granted and became the nucleus of Bourgois Island. When first recognized the bar comprised between fifteen and twenty acres. The current of the stream bifurcated and formed a channel on either side of the bar. A navigable channel has always existed on the west side of the bar. At about the same time the bar appeared the east channel of the river commenced to erode the mainland on the east. River boats navigated the channels on both sides of the

bar. The erosion of the mainland proceeded eastward at a rate of about twenty to forty rods per year until about 1922 at which time the east channel reached its farthermost limits. In this process patented lands claimed by defendants were totally destroyed. As the east channel moved eastward the east side of the bar which formed the west bank of the east channel grew progressively and imperceptibly by the deposit of alluvion by the process of accretion. By 1928 the bar, by reason of aggradation which occurs in the Missouri River during periods of high water, had been built up in elevation to the point where it had become fast dry land comprising several hundred acres and was capable of being used for grazing and other agricultural purposes and had achieved the stability and dignity of an island. This is evidenced by the fact that in the spring of the year 1928 the State Land Department assumed control over this island and leased it to W. F. and F. L. Schafer for agricultural purposes for the season of 1928.

In the course of time, as the river spent its force in the lengthened east channel, the west channel resumed the entire burden of the stream. The east channel gradually filled up by sedimentation from the more sluggish current. By 1942, the east channel had stopped flowing altogether during periods of low water, but continued to flow during periods of high water. Continued exposure to high water increased the aggradation of the bed of the east channel and added accretions to the mainland as well as to the island so that the island and the mainland became virtually joined except during periods of high water. The island and the mainland maintained their individual character during the time the east channel of the river changed from a navigable and destructive current to a harmless strip of lowlands connecting the island to the mainland. At no time did the current in the east channel of the river reverse its action and appreciably erode the island or materially restore to the mainland alluvial deposits by accretion, although there is evidence that as the stream in the

east channel ceased to flow, alluvial deposits were restored to the mainland to the line of contact between it and the island in the bed of the east channel. See illustrative sketch by the court.

The defendants do not contend nor does the evidence establish that the defendants or those through whom they claim have perfected title upon any theory of adverse possession or prescriptive use.

Alluvial accretions to nuclear bar comprising Bourgois Island.

Alluvial accretions to Island following aggradation of east channel.

Alluvial accretions to mainland following aggradation of east channel.

The defendants contend only that while the lands of their predecessors in interest were washed away by erosion of the river, lands, by alluvial accretions, have been restored to the identical location of the former lands the boundaries of which can be re-established and hence that they have a title to the contrary of that claimed by the plaintiffs upon any theory of accretions. This argument conveniently ignores the fundamental basis of riparian rights, as we shall demonstrate by examining the applicable statutes in the light of the facts in this case. The defendants do not contend and the evidence does not show that the alluvial accretions comprising Bourgois Island were added gradually and imperceptively to their mainlands.

As a preliminary statement, it is clear from the undisputed testimony in this case and from prior holdings of this court that the Missouri River is a navigable stream in this state. Gardner v. Green, 67 N.D. 268, 271 N.W. 775, and State v. Loy, 74 N.D. 182, 20 N.W.2d 668.

Prior to amendment in 1953, § 47–0608 NDRC 1943 provided as follows:

"Islands and accumulations of land formed in the beds of streams which are navigable belong to the state, if there is no title or prescription to the contrary."

A contrary rule is, of course, provided by statute in the case of a stream which is not navigable. Section 47–0609 NDRC 1943. See also Sections 47–0114 and 47–0115 NDRC 1943.

The phrase "if there is no title or prescription to the contrary" in Section 47–0608 contemplates such exceptions as arise when title to an island was vested in the federal government upon admission of the state to the Union or when the state has conveyed title to a person, as was done in the instant case, or when a title is established by adverse possession for the appropriate prescriptive period.

In State v. Loy, supra, it was held that title to the lands under navigable waters vested in the State of North Dakota as an incident of sovereignty and, conformable to Section 47–0608 NDRC 1943, that the title to an island which was formed by alluvial accretions to the bed of a navigable stream but which was not fast dry land at the time North Dakota was admitted to the Union is vested in the State of North Dakota.

The title of the State of North Dakota to lands below low water mark of a navigable stream is coextensive with the bed of the stream as it may exist from time to time. This is a necessary corollary to the rule that the owner of lands riparian to a navigable stream owns title to the low water mark. Gardner v. Green and State v. Loy, supra. Were the rule otherwise, the dominion and control of navigation by the state (subject only to the limitations of the Commerce Clause of the Federal Constitution), would depend on the vagaries of the river, permitting the state control where the river adhered to its course at the time of admission of the State to the Union and denying the State control where the river, in the process of erosion, subsequently migrated and submerged patented lands. This would lead to absurd and whimsical results.

As the riparian owner acquires title to additions to his riparian lands by accretion and reliction, he likewise loses title to such portions as are eroded and washed away by a navigable stream. Oberly v. Carpenter, 67 N.D. 495, 274 N.W. 509; 56 Am.Jur., Waters, Sec. 477. Thus, in the case at bar, as the Missouri River eroded and submerged the mainlands on the east bank of the river, including the patented lands claimed by the defendants and their predecessors in interest, and utterly destroyed such lands to the depth of the channel below low water mark, the title to the submerged lands passed by operation of law to the State of North Dakota. Consequently, as the nuclear bar grew by the gradual and imperceptible process of accretion from the shore opposite the erosion and rebuilt land where the submerged lands had been, the newly formed island or accumulation of land was built entirely upon lands owned by the State of North Dakota.

. Thus, it is clear that the defendants cannot invoke any of the exceptions of Section 47–0608 NDRC 1943 to the case at bar for the reason that the nucleus of the island or accumulation of land and all additions thereto had formed as alluvial accretions to the bed of a navigable stream the title to which bed was vested in the State of North Dakota. State v. Loy, supra. Inasmuch as the nuclear bar, from which Bourgois Island developed, had not become fast dry land at the time North Dakota was admitted to the Union title to it vested in the State of North Dakota. State v. Loy, supra.

It is well-settled law in this state that the plaintiff in an action to determine adverse claims and quiet title must recover, if at all, upon the srength of his own title and not upon the weakness of the title of his adversary. Sailer v. Mercer County, 77 N.D. 698, 45 N.W.2d 206, 22 A.L.R.2d 988.

There remains to be determined, therefore, whether the usual rules of accretion and reliction may be applied to such an island or accumulation of land so as to confer upon the owner of the island or accumulation of land title to all additions formed thereto from natural causes.

Section 47–0605 NDRC 1943 provides as follows:

"Where from natural causes land forms by imperceptible degrees upon the bank of a river or stream, navigable or not navigable, either by accumulation of material or by the recession of the stream, such land belongs to the owner of the bank, subject to any existing right-of-way over the bank."

The foregoing statute is essentially a restatement of the well-established common law rule governing riparian rights. This rule was aptly applied by this court in Oberly v. Carpenter, supra, where, as in the case at bar, the tract of land out of which the controversy arose was formed gradually and by imperceptible degrees and not by avulsion, that is, its formation could not be seen at any particular moment and could only be noted after the lapse of some time. In that case, speaking for the court, Judge Nuessle stated [67 N.D. 495, 274 N. W. 513]:

"The defendants further insist that, in any event, the new land thus added to the plaintiff's land and to which plaintiff claims title under section 5473, cannot extend beyond the section line between section 24 and 25 and section 23 and 26. The first answer to this contention is that at the time of the survey this section line was not run north of the river. The second and conclusive answer is that the law governing riparian rights has no regard for artificial boundary lines, whether between sections or their subdivisions, or between counties, states, or nations. See the illuminating opinion of Mr. Justice Brewer in [State of] Nebraska v. Iowa [143 U.S. 359, 12 S.Ct. 396, 36 L.Ed. 186], supra. See, also, Widdecombe v. Chiles, 173 Mo. 195, 73 S.W. 444, 61 L.R.A. 309, 96 Am.St.Rep. 507; Yearsley v. Gipple, 104 Neb. 88, 175 N.W. 641, 8 A.L.R. 636; Doebbeling v. Hall, 310 Mo. 204, 274 S.W. 1049, 41 A.L.R. 382. The controlling rule as it applies in the instant case may be stated thus: 'Where a water line is the boundary of a given lot, that line, no matter how it shifts, remains the boundary, and a deed describing the lot by number or name conveys the land up to such shifting line exactly as it does up to a fixed side line and conveys all accretion thereto.' Jefferis v. East Omaha Land Co. [134 U.S. 178, 10 S. Ct. 518, 33 L.Ed. 872], supra."

This rule, as applied to an island, is correctly stated by 4 Tiffany, Real Property (3rd ed.), Sec. 1228 as follows:

"In the case of an island, the same rule applies as in the case of land bounded by water on one side only, that is, the boundaries are presumed to vary with any gradual change in the line between the land and the water or, as it is otherwise expressed, the owner of an island is entitled to land added thereto by accretion to the same extent as the owner of land on the bank or

shore of the mainland. Accordingly, since title may be acquired by prescription to an island which otherwise would belong to a riparian owner, accretions to such an island belong to the prescriptive owner and not to the riparian owner. *In case accretions to the island and to the mainland eventually meet, the owner of each, it is said, owns the accretions to the line of contact, or, as we would prefer to express it, the boundary of an island, as that of the mainland, changes as its edge or shore line changes, and when there is no longer any island, owing to the growth of the accretions, he to whom the island belonged owns to where its edge or shore line was last visible."* (Italics supplied.)

Citing Naylor v. Cox, 114 Mo. 232, 21 S.W. 589; Holman v. Hodges, 112 Iowa 714, 84 N.W. 950, 58 L.R.A. 673, 84 Am. St.Rep. 367; Cooley v. Golden, 117 Mo. 33, 23 S.W. 100, 21 L.R.A. 300; and Fowler v. Wood, 73 Kan. 511, 85 P. 763, 6 L.R.A., N.S., 162, 117 Am.St.Rep. 534.

Where an island arises in a navigable river apart from riparian owners' land, as in the case at bar, such owners cannot claim title thereto by reason of their riparian rights, though the island is afterwards joined to their land, since it did not become part thereof by gradual accretion to or reliction from the shore. Holman v. Hodges, supra; Hahn v. Dawson, 134 Mo. 581, 36 S.W. 233; Crandall v. Smith, 134 Mo. 633, 36 S.W. 612; Buse v. Russell, 86 Mo. 209, 214. It is upon this principle that many of the cases cited by counsel for defendants do not sustain their position in the case at bar. Typical of these cases are Allard v. Curran, 41 S.D. 73, 168 N.W. 761; Yearsley v. Gipple, 104 Neb. 88, 175 N.W. 641, 8 A.L.R. 636; Dailey v. Ryan, 71 S.D. 58, 21 N.W.2d 61. See also 8 A.L.R. 640, 41 A.L.R. 395. These are cases where the Missouri River washed away all of a tract that was riparian to the river and for some distance into a more remote tract and thereafter the river receded and by gradual accretion to or reliction from the mainland restored all of both tracts. This situation must be distinguished from the case at bar where the accretions and relictions claimed by the plaintiffs accrued to the island and not to the mainland.

The rule is succinctly expressed in 65 C.J.S., Navigable Waters, § 82, subd. f, as follows:

"The owner of an island is entitled to land added thereto by accretion to the same extent as the owner of land on the shore of the mainland. If the accretion commences with the shore of the island and afterward extends to the mainland, or any distance short thereof, all the accretion belongs to the owner of the island; but, if accretions to the island and to the mainland eventually meet, the owner of each owns the accretions to the line of contact."

See also 56 Am.Jur., Waters, Secs. 489 and 505, and 65 C.J.S., Navigable Waters, § 82, subd. d(2), and 45 C.J., Navigable Waters, p. 527, n. 55.

In Waldner v. Blachnik, 65 S.D. 449, 274 N.W. 837, 839, the basis of the claim of the plaintiffs to the land in controversy rested upon an asserted right to accretions forming from a sand bar which appeared over the place where the western extremity of an island had been before it was washed away. As the river moved away from the mainland on the north bank accretions were formed causing the new island and the mainland to meet. The defendant claimed title to the accretions in front of his land by reason of ownership of the riparian mainland. The court, in rejecting the defendants' contention, stated:

"The fact that accretions to the island and to the mainland eventually meet affords no reason for varying the ordinary rule that accretions belong to the land upon which their formation begins and from which it extends. The line of contact becomes the boundary line between the respective riparian owners."

Judgment for plaintiffs was reversed, however, upon the ground that plaintiffs had failed to establish the boundary or line of contact between the accretions to the island or sand bar and the mainland.

■ In the case at bar the evidence is examined and it is held that the plaintiffs, by competent survey made in the year 1950, have established for all practical purposes the boundary of Bourgois Island and the line of contact—the medial line of the watercourse in the east channel—between it and the mainland. We hold, therefore, under the applicable statutory provisions and established rules governing riparian rights, that the plaintiffs have perfected title to Bourgois Island as surveyed and platted.

The plaintiffs having established title to the island and accretions thereto, it is not necessary to consider the contentions of the plaintiffs with respect to other issues. The judgment of the district court is reversed with directions to enter judgment in favor of the plaintiffs for the relief demanded in their complaint.

BURKE, C. J., MORRIS and GRIMSON, JJ., and JOHN SAD, District Judge, concur.

SATHRE and JOHNSON, JJ., deeming themselves disqualified did not participate, EUGENE A. BURDICK and JOHN SAD, District Judges, sitting in their stead.

On Petition for Rehearing

EUGENE A. BURDICK, District Judge.

The respondents have filed a petition for rehearing in which they suggest that the court has overlooked a controlling statute, Section 47-0610 NDRC 1943 which reads as follows:

"If a stream, navigable or not navigable, in forming itself a new arm divides itself and surrounds land belonging to the owner of the shore and thereby forms an island, the island belongs to such owner."

■ This statute contemplates a situation where a stream in high water, whether suddenly by avulsion, perhaps induced by an ice gorge in its channel, or gradually by intermittent action at flood stage, cuts a new or auxiliary channel around a portion of the mainland and leaves such portion intact as an island and as a recognizable segment of the mainland from which it was severed. It has no application to the situation in the case at bar where the stream, moving by gradual and imperceptible degrees, eroded and utterly destroyed the mainland in the area in controversy, leaving no part of it intact and identifiable above low-water mark. See Payne v. Hall, 192 Iowa 780, 185 N.W. 912.

We adhere to our former opinion.

BURKE, C. J., GRIMSON and MORRIS, JJ., and JOHN SAD, District Judge, concur.

SATHRE and JOHNSON, JJ., did not participate.